IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


Civil Action No. 13-3066


Jose Luis Torres,
                    Plaintiff

        V.


Allentown Police Department, et al.,
                    Defendants

---

## AMENDED COMPLAINT

---


Superseding the original complaint filed in the above captioned matter, on or about June 3, 2013.


RECEIVED
SEP 18 2013

Jose Luis Torres
Pro Se

KK-9715
SCI Smithfield
P.O. Box 999
Huntingdon, Pa 16652

# Table of Contents

Initial Action ................................................................. 1

Introductory Statement ......................................................... 2

Jurisdiction ................................................................... 2

Previous Parties ............................................................... 2

New Parties .................................................................... 6

Factual Allegations ............................................................ 9

    Arrest Warrant ............................................................ 9

    Search Warrant ........................................................... 10

    Surveillance, Plaintiff's Residence, 4942 Route 309,
      Lot 110, Center Valley, Pa ............................................ 10

    Surveillance, Plaintiff's Garage, 838 Hickory St.,
      Unit #13, Allentown, Pa ............................................... 11

    Surveillance, 600 block of North 7th St., Allentown, Pa ............... 11

    Entrapment, i.e., repeated phone calls to plaintiff's phone ....... 12, 13

    Surveillance, 700 block of Liberty St., Allentown, Pa ................. 12

    Surveillance, T.D. Bank, 1838 Tilghman St., Allentown, Pa ............. 13

    Surveillance/ Covergence of all police units
      to plaintiff's garage ................................................. 13

    Police engage plaintiff ................................................... 16

    Assault .................................................................. 17

    Police Headquarters ...................................................... 20

    Medical Attention/ Hospital .............................................. 20

    Return to Police Headquarters ............................................ 20

    Pattern of Police Brutality .............................................. 22

Federal Causes of Actions ..................................................... 25

State Tort Claims ............................................................. 28

Relief Requested .............................................................. 30

Jose Luis Torres,                                    :     Civil Action No. 13-3066
                     Plaintiff                       :
          V.                                         :     Assigned To:
Allentown Police Department, et al.,                 :     Hon. Thomas N. O'Neill, Jr.
                     Defendants                      :     (Jury Trial Demanded)
                                                     :

## Amended Complaint

And Now, Comes the Plaintiff, Jose Luis Torres, and hereby amends his previous complaint, as follows:

1. On or about June 3, 2013, the plaintiff, Jose Luis Torres, filed a complaint under 42 U.S.C. Section 1983, in the above captioned matter.

2. On or about July 16, 2013, defendant, Detective/Officer Chad Moyer, filed a petition to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim on the plaintiff's complaint, upon which relief could be granted.

3. On or about August 2, 2013, defendants, Allentown Police Department, Allentown Vice Unit, and other individual police officers, filed their petition to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim on the plaintiff's complaint, upon which relief could be granted.

4. On or about August 5, 2013, defendants, Detective Frey, and Lehigh County Drug Task Force, filed their petition to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim on the plaintiff's complaint, upon which relief could be granted.

5. The plaintiff responded to all of the above petitions to dismiss, and on August 20, 2013, the Court dismissed all of the above defendants'

-1-

petitions to dismiss, and granted the plaintiff leave to amend his complaint. The plaintiff thus files the following amended complaint, in the hopes of curing, and addressing, all of the deficiencies complained of previously, as follows:

## Introductory Statement

6. This is an action for damages sustained by a citizen of the U.S., against police officers of the Allentown Police Department, and other outside assisting agencies, who unlawfully assaulted him, and endangered his life, with the manner in which the arrest was executed, as fully explained below, and against the Chief of Police, for the City of Allentown, and the Head of the Lehigh County Drug Task Force, as the supervisory officers responsible for the conduct of the defendants, individual police officers, and for their failure to take corrective action with respect to police personnel whose vicious propensities were notorious, to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct, and against the City of Allentown, and the County of Lehigh, as the employers of the police personnel, which are sued as persons under 42 U.S.C. Section 1983.

## Jurisdiction

7. This is further a civil action for damages brought pursuant to the U.S. Constitution and 42 U.S.C. Sections 1983 and 1988, resulting from the deprivations under color of law of plaintiff's rights, under the fourth, fifth, sixth, eighth, and fourteenth amendments to the U.S. Constitution, and for tortious behavior under Pennsylvania State Law.

## Previous Parties

9. Plaintiff, Jose Luis Torres, at all times relevant to this complaint, was a resident of the State of Pennsylvania, and a citizen of the United States.

-2-

10. At all times relevant hereto, defendant, Matthew M. Karnish, identified previously as Detective Matt Karnish, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, and believed to be a detective assigned to the Allentown Police Department's Vice and Intelligence Unit. At all relevant times, he was acting in such a capacity as the agent, servant, and employee of defendant, City of Allentown. He is sued individually and in his official capacity.

11. At all times relevant hereto, defendant, Stephen J. Milkovitz III, identified previously as Detective J. Milkovitz III, was a police officer employed by the defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, and believed to be a detective assigned to the Allentown Police Department's Criminal Investigations Division. At all relevant times, he was acting in such capacity as the agent, servant, and employee of defendant, City of Allentown. He is sued individually and in his official capacity.

12. At all times relevant hereto, defendant, Kevin R. Mriss, identified previously as Detective Kevin Mriss, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, and believed to be a detective assigned to the Allentown Police Department's Criminal Investigations Division. At all relevant times he was acting in such capacity as the agent, servant, and employee, of defendant, City of Allentown. He is sued individually and in his official capacity.

13. At all times relevant hereto, defendant, Kyle Hough, identified previously as Detective Kyle Hough, was a police officer employed by

-3-

defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, and believed to be a detective assigned to the Allentown Police Department's Vice and Intelligence Unit. At all relevant times, he was acting in such capacity as the agent, servant, and employee, of defendant, City of Allentown. He is sued individually and in his official capacity.

14. At all times relevant hereto, defendant, William Lake, identified previously as Detective Lake, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, and believed to be a detective sergeant assigned to an unknown part of the Allentown Police Department. At all relevant times, he was acting in such capacity as the agent, servant, and employee, of defendant, City of Allentown. He is sued individually and in his official capacity.

15. At all times relevant hereto, defendant, Raymond Sannie, identified previously as Detective Raymond Sannie, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, and believed to be a detective assigned to an unknown part of the Allentown Police Department. At all relevant times he was acting as the agent, servant, and employee, of defendant, City of Allentown. He is sued individually and in his official capacity.

16. At all times relevant hereto, defendant, Todd Frey, identified previously as Detective Frey, was a police officer employed by defendant, County of Lehigh, located in Pennsylvania, to perform duties, and believed to be a detective assigned to the Lehigh County Drug Task Force. At all relevant times, he was acting in such capacity as the agent, servant, and employee, of both defendants, City of Allentown, and County of Lehigh. He is sued individually and in his official capacity.

17. At all times relevant hereto, defendant, Mark Boyer, identified previously as Detective Mark Boyer, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, and believed to be a detective assigned to the Allentown Police Department's Criminal Investigations Division. At all relevant times he was acting as the agent, servant, and employee, of defendant, City of Allentown. He is sued individually and in his official capacity.

18. At all times relevant hereto, defendant, Chad Moyer, previously identified as Detective/Officer Chad Moyer, was a police officer employed by defendant, County of Lehigh, located in Pennsylvania, to perform duties, and believed to be a detective assigned to the Lehigh County Drug Task Force. At all relevant times, he was acting in such capacity, as the agent, servant, and employee, of defendants, City of Allentown, and Lehigh County. He is sued individually and in is official capacity.

19. At all times relevant hereto, defendant, Randy Fey, previously identified as Detective Fey, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, and believed to be a detective assigned to the Allentown Police Department's Vice and Intelligence Unit. At all relevant times, he was acting in such capacity, as the agent, servant, and employee, of defendant, City of Allentown. He is sued individually and in his official capacity.

20. At all times relevant hereto, defendant, Michael Faulkner, previously identified incorrectly as Detective William Faulkner, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, and believed to be a detective in an unknown part of the Allentown Police Department. At all relevant times, he was acting in such capacity as the agent, servant, and employee, of defendant City

-5-

of Allentown. He is sued individually and in his official capacity.

21. At all times relevant hereto, defendants, other unknown police officers, were police officers employed by defendants, City of Allentown, County of Lehigh, and/or some other unknown municipality, or government agency, acting jointly, and in concert with defendants, City of Allentown, County of Lehigh, and the individually named police officers listed herein, and performing duties, rank and assignments unknown. At all relevant times, these unknowns acted in such capacity as the agents, servants, and employees, of defendant, City of Allentown. These unknowns are sued individually and in their official capacities.

22. Defendant, previously identified as Allentown Police Department, is the incorrect employer of defendants listed herein. As such, the name Allentown Police Department is being changed to City of Allentown, to reflect the correct employer. Please refer to paragraph 33 herein, for defendant, City of Allentown.

23. Defendant, previously identified as Lehigh County Drug Task Force, is the incorrect employer of defendants listed herein. As such, the name Lehigh County Drug Task Force is being changed to County of Lehigh, to reflect the correct employer. Please refer to paragraph 34 herein, for defendant, County of Lehigh.

24. Defendant, previously identified as Allentown Vice Unit, is hereby withdrawn.

## New Parties/Defendants

25. At all times relevant hereto, defendant, Jason Krasley, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, and believed to be a detective assigned to the Allentown Police Department's Vice and Intelligence Unit.

-6-

At all relevant times, he was acting in such capacity, as the agent, servant, and employee, of defendant, City of Allentown. He is sued individually and in is official capacity.

26. At all times relevant hereto, defendant, Justin M. Motz, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, rank and assignment unknown. At all relevant times, he was acting in such capacity, as the agent, servant, and employee, of defendant, City of Allentown. He is sued individually and in his official capacity.

27. At all times relevant hereto, defendant, Robert J. Kulp, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, rank and assignment unknown. At all relevant times, he was acting in such capacity, as the agent, servant, and employee, of defendant, City of Allentown. He is sued individually and in his official capacity.

28. At all times relevant hereto, defendant Christopher Cruz, was a police officer employed by defendant, County of Lehigh, located in Pennsylvania, to perform duties, and believed to be a detective sergeant assigned to the Lehigh County Drug Task Force. At all relevant times, he was acting in such capacity, as the agent, servant, and employee, of defendants, City of Allentown, and County of Lehigh. He is sued individually and in his official capacity.

29. At all times relevant hereto, defendant, Detective Weaver, was a police officer employed by defendant, City of Allentown, located in Lehigh County, Pennsylvania, to perform duties, rank and assignment unknown. At all relevant times, he was acting in such capacity, as the agent, servant, and employee, of defendant, City of Allentown. He is sued individually and

-7-

in his official capacity.

30. At all times relevant hereto, defendant, Thomas Nicolletti, was a
police officer employed by an unknown municipality, at the Upper Saucon
Township Police Department, located in Center Valley, Lehigh County,
Pennsylvania, to perform duties, and believed to be a detective assigned to
the Criminal Investigations Unit, of his police department. At all relevant
times, he was acting together with, and in such capacity, as the agent,
servant, and employee, of defendant City of Allentown. He is sued
individually and in his official capacity.

31. At all times relevant hereto, defendants unknown supervisors, were
the duly appointed heads of the Criminal Investigations Division, and the
Vice and Intelligence Unit, of the Allentown Police Department, and of the
Lehigh County Drug Task Force. As such, they were the superior officers of
the defendants listed herein, in paragraphs 10 through 21, and 25 through 29;
and were responsible for their training, supervision, and conduct. They were
also responsible by law, for enforcing regulations of the Allentown Police
Department, and Lehigh County Drug Task Force; and for ensuring that their
subordinates obey the laws of the City of Allentown, County of Lehigh, State
of Pennsylvania, and United States. At all relevant times, they were acting
in such capacity as, the agents, servants, and employees, of defendants, City
of Allentown, and County of Lehigh. They are sued individually and in their
official capacities.

32. At all times relevant hereto, defendant unknown Chief of Police, was
the duly appointed head of the Allentown Police Department, employed by
defendant City of Allentown, which is located in Lehigh County, Pennsylvania.
As such, he was the commanding officer of all defendants named above, in
paragraphs 10 through 21, and 25 through 31, and was responsible for their

-8-

training, and/or supervision, and/or conduct. He was also responsible by law, for enforcing the regulations of the Allentown Police Department, and for ensuring that Allentown Police Department personnel, and all assisting outside agency personnel, obey the laws of the City of Allentown, County of Lehigh, State of Pennsylvania, and United States. At all relevant times, he was acting in such capacity as the agent, servant, and employee, of defendant City of Allentown. He is sued individually and in his official capacity.

33. The defendant City of Allentown is a municipal corporation within Lehigh County, Pennsylvania; and at all relevant times, employed, or temporarily employed, or used the assistance of, all defendants named and listed above, in paragraphs 10 through 21, and 25 through 32. The defendant City of Allentown is sued as a person under 42 U.S.C. Section 1983, in it's official capacity.

34. The defendant County of Lehigh is a municipal corporation within the state of Pennsylvania, and at all relevant times, employed those defendants listed herein, in paragraphs 16, 18, 21, 28, and 31. The defendant County of Lehigh is sued as a person under 42 U.S.C. Section 1983, in it's official capacity.

35. At all times relevant hereto, and in all their actions described herein, all of the above listed defendants named, in paragraphs 10 through 21, and 25 through 34, were acting under color of law, and pursuant to their authority as police personnel.

## Factual Allegations

36. On information and belief, on June 1, 2011, at or about 1000 hours, police officers from Allegheny County, Pennsylvania, contacted defendant City of Alentown, by and through it's police department, and requested assistance

-9-

with locating the plaintiff, due to a warrant for his arrest, out of
Allegheny County.

37. On information and belief, the defendant City of Allentown, by and
through it's communications center, confirmed the validity of the warrant out
of Allegheny County, Pennsylvania, for the plaintiff.

38. On information and belief, at some unknown date and time, but before
June 3, 2011, defendant Mark Boyer (hereinafter Boyer), obtained the
plaintiff's cellular telephone number: 484-201-5742, from a confidential
source.

39. On information and belief, on June 3, 2011, using the fact an active
warrant out of Allegheny County existed for the plaintiff, as probable cause
to apply for a search warrant, defendant Boyer filed an application with the
Lehigh County Court of Common Pleas, to electronically surveillance, and
track the cellular phone of the plaintiff, using global positioning.

40. On information and belief, on June 3, 2011, the Honorable Kelly
Banach, of the Lehigh County Court of Common Pleas, granted defendant Boyer's
application/search warrant.

41. It is believed that the scope and objective of the above search
warrant was limited to locating, and immediately arresting the plaintiff,
upon being found.

42. On information and belief, that as a result of the above search
warrant, defendants Boyer, Kevin R. Mriss (hereinafter Mriss), and other
unknown police officers (hereinafter unknowns), by way of global positioning,
were led to the plaintiff's residence located at 4942 Route 309, Lot # 110,
Center Valley, Pennsylvania, at or about 1315 hours.

43. On information and belief, defendant Thomas Nicolletti (hereinafter
Nicolletti), joined defendants Boyer, Mriss, and unknowns, outside the

-10-

plaintiff's residence, at or about 1315 hours, June 3, 2011.

44. On information and belief, June 3, 2011, at or about 1315 hours, defendants Boyer, Mriss, Nicolletti, and unknowns, confirmed the plaintiff was inside his residence, but did not arrest him.

45. It is believed that defendants Boyer, Mriss, Nicolletti, and unknowns, decided to ignore the active warrant for the plaintiff's arrest, out of Allegheny County, and further decided to exceed the Lehigh County search warrant of June 3, 2011, by deciding to surveillance without arrest.

46. The plaintiff exited his residence shortly after the above defendant police officers had arrived, with his friend, Amber Love Breeland, and both entered a Chevy Tahoe vehicle, bearing a Pennsylvania registration: HND2110.

47. The plaintiff drove to the City of Allentown, Pennsylvania. Amber Love Breeland rode in the front passenger seat.

48. On information and belief, defendants Boyer, Mriss, Nicolletti, and unknowns, followed the plaintiff, from Center Valley into the City of Allentown, Pennsylvania.

49. The plaintiff stopped at his garage located at 838 Hickory St., Unit #13, Allentown, Pennsylvania.

50. On information and belief, defendant Christopher Cruz (hereinafter Cruz), if not already a part of, joined defendants Boyer, Mriss, Nicolletti, and unknowns, i.e. police surveillance team, with surveilling the plaintiff, while at his garage.

51. The plaintiff left his garage and drove to the 600 block of north 7th St., Allentown, Pa.

52. On information and belief, the above defendants, i.e. police surveillance team, followed the plaintiff to the 600 block of north 7th St., Allentown, Pa.

53. On information and belief, defendants Kyle Hough (hereinafter Hough), Matthew M. Karnish (hereinafter Karnish), Jason Krasley (hereinafter Krasley), and unknowns, if not already a part of, joined the police surveillance team, while the plaintiff was on the 600 block of north 7th St., Allentown, Pa.

54. On information, personal knowledge, and belief, while the plaintiff was on the 600 block of north 7th St., Allentown, Pa., defendant Dtective Weaver (hereinafter Weaver), called the plaintiff's phone, by using a friend of the plaintiff's, known as "Haley," to inquire about obtaining a gun, from the plaintiff.

55. The plaintiff informed Haley he did not have any guns, nor could he supply her with one, and ended the call.

56. On information, personal knowledge, and belief, defendant Weaver, again instructed Haley to call the plaintiff back, a second time.

57. Haley called the plaintiff a second time, and begged and pleaded for him to give her a gun. Haley reminded the plaintiff that he knew about "her situation".

58. "The situation," Haley was referring to, was in reference to a conversation that had taken place, between plaintiff and her, a few days prior to the call, where she had stated she had been robbed at gun point at her home.

59. Again, the plaintiff was unwilling to give his friend Haley a gun, and informed her he did not have any guns he could give her, and ended the call.

60. The plaintiff left the 600 block of north 7th St., and drove to the 700 block of Liberty St., Allentown, Pa.

61. On information and belief, defendants, i.e., the above police

-12-

surveillance team, followed the plaintiff to this next location.

62. The plaintiff then left the 700 block of Liberty St., and drove to T.D. Bank, located at 1838 Tilghman St., Allentown, Pa.

63. On information and belief, defendants, i.e., the above police surveillance team, followed the plaintiff to this next location.

64. On information and belief, while the plaintiff was at T.D. Bank, defendant Weaver instructed Haley to call the plaintiff back, yet a third time, about obtaining a gun, with an offer of four hundred dollars for one.

65. Haley called the plaintiff back, and having wore the plaintiff down, with the persistent, harassing, back to back phone calls, the reminder she had been robbed and needed protection, and an exuberant offer of money, the plaintiff finally agreed to obtain a 9mm pistol for her.

66. Haley asked the plaintiff if he had the 9mm pistol with him, or in the vehicle. The plaintiff informed her he did not.

67. The plaintiff agreed to meet Haley at her residence in about two hours.

68. The plaintiff left the bank and drove back to his garage located at 838 Hickory St., Unit #13, Allentown, Pa., at or about 1600 hours, on June 3, 2011.

69. On information and belief, defendants, i.e., the above police surveillance team, followed the plaintiff to his garage.

70. On information and belief, the defendants, the above police surveillance team, advised each other that the plaintiff was unarmed, and was on his way to his garage to obtain a 9mm firearm.

71. On information and belief, the defendant unknown head, or officer in charge of this surveillance operation, advised that he was ready to execute the arrest of the plaintiff, however, everyone was to wait until

-13-

after the plaintiff became armed with the 9mm weapon, which was inside the garage.

72. Running east to west, the plaintiff's garage was situated on Hickory St., between 8th and 9th Sts., in Allentown, Pa.

73. Running south to north, the plaintiff's garage was situated on Lumber St., between Jackson and Walnut Sts., in Allentown, Pa.

74. The plaintiff arrived at his garage and parked in front of it, at or about 1610 hours, on June 3, 2011.

75. The plaintiff exited the vehicle, opened his garage door, and stepped inside his garage.

76. On information and belief, while the plaintiff was traveling to, or upon his arrival at the garage, the following defendants also arrived and waited on stand-by status, in and around the area of the plaintiff's garage, as follows:

77. On information and belief, defendant unknown, assigned to the Criminal Investigations Division, of the Allentown Police Department, was the first officer there, his or her precise location unknown, awaiting the plaintiff's arrival at his garage.

78. On information and belief, defendant Justin M. Motz (hereinafter Motz), stationed himself at or about 9th and Walnut Streets.

79. On information and belief, defendant Robert J. Kulp (hereinafter Kulp), stationed himself at or about 9th St., between Hickory and Walnut Streets.

80. On information and belief, defendants Chad Moyer, and Todd Frey (hereinafter Moyer and Frey), were stationed at or about 9th and Hickory Streets.

81. On information and belief, defendant Michael Faulkner (hereinafter

-14-

Faulkner), was stationed at or about 9th St., between Jackson and Walnut Streets.

82. On information and belief, defendants Karnish, and Krasley, riding double, or together, were stationed at or about Lumber and Walnut Sts., or Lumber and Jackson Sts.

83. On information and belief, defendant Hough was stationed at or about Walnut, or Jackson St., between 8th and 9th Sts.

84. On information and belief, defendant Stephen J. Milkovitz, III, (hereinafter Milkovitz), was stationed at or about Walnut or Jackson St., between 8th and 9th Sts.

85. On information and belief, defendants Boyer, Mriss, and Nicolletti, were stationed at or about Walnut, or Jackson St., between 8th and 9th Sts.

86. On information and belief, defendants Randy Fey, William Lake, and Raymond Sannie (hereinafter Fey, Lake, and Sannie), were stationed at or about the area of the plaintiff's garage, their precise location unknown.

87. On information and belief, defendant Cruz, was at or about the area of the plaintiff's garage, his precise location unknown.

88. On information and belief, defendants unknowns, were at or about the area of the plaintiff's garage, their precise locations unknown.

89. The plaintiff exited his garage with a white bag in hand. Inside the bag was an unloaded 9mm firearm.

90. The plaintiff approached the Chevy Tahoe vehicle, and placed the bag on the front driver's seat.

91. The plaintiff turned around, walked back to his garage, and proceeded to close his garage door.

92. On information and belief, defendant unknown head of the surveillance operation, advised, and gave the order, that the arrest would

-15-

take place, once the plaintiff got back into the vehicle, and became mobile, or began to drive again.

93. The plaintiff entered the Chevy Tahoe vehicle, at or about 1615 hours, on June 3, 2011, and placed the white bag containing the gun, on the floorboard of the vehicle, and drove the vehicle south on Lumber St., then made a right turn onto Hickory St., westbound toward 9th St.

94. The plaintiff was driving at a speed of perhaps five miles an hour down Hickory St. (an alleyway).

95. At the end of Hickory St., where it intersects with 9th St., on the left, there's a small automotive repair shop, or garage there.

96. A man brandishing a firearm in hand, wearing civilian clothing, came running from the left side of 9th St., where the shop is, onto Hickory St. eastbound, towards the front of the plaintiff's vehicle, stopping approximately 50 feet before the vehicle, and pointed his gun at the front windshield, and yelled "get out of the car."

97. The gunman was by himself.

98. Upon information and belief, from the reading of police reports, it is believed the identity of this gunman is, more likely than not, defendants Frey, or Moyer.

99. The gunman referred to in paragraphs 96-98, did not identify himself as a police officer to the plaintiff, at this point in time, nor at any other point in time registered by the plaintiff.

100. The gunman did not flash a police badge at this point in time, nor at any other point in time registered by the plaintiff, as both the gunman's hands were on his gun.

101. The plaintiff did not recognize this gunman as a police officer, and did in fact, believe the gunman meant to harm his life, and that of

-16-

his passenger.

102. Fearing for his life, and that of his passenger, the plaintiff shifted his vehicle into reverse, and stepped heavily on the gas pedal.

103. As the plaintiff took the action described in paragraph 102, he maintained his visual on the gunman.

104. The span of time between this gunman running out in front of the plaintiff's vehicle, and the plaintiff reversing, was perhaps five seconds.

105. Immediately upon reversing, plaintiff attempted to turn his neck to look behind him, but crashed by accident, into an unseen civilian vehicle, before he could fully turn his neck around.

106. Upon information and belief, the vehicle plaintiff crashed into, was a civilian minivan rented, and being driven by defendant Hough, working undercover.

107. Upon crashing, the gunman referred to in paragraph 98, was still standing in the street, before the vehicle, and still pointing his gun at the plaintiff.

108. Plaintiff immediately shifted back into park, opened his driver's side door, instructing his passenger to do the same, with the intention of getting behind his vehicle, for protection, or safety.

109. Upon opening the driver's side door, and placing his left foot on the running board, the plaintiff was immediately grabbed from behind, specifically by his rear left shirt collar, by unseen defendants.

110. At the same time that the plaintiff was grabbed from behind, the gunman believed to be defendant Frey, or Moyer, quickly ran up to the plaintiff, and punched him repeatedly in the face, through the open driver's side door window.

111. Immediately following the punches delivered by the defendant

-17-

believed to be Frey, or Moyer, a parade of punches began to land all about the Plaintiff's face and head, from all angles, from multiple Defendants surrounding him.

112. The Plaintiff could not see who was hitting him, as he was being attacked by numerous Defendants, who were throwing quick, repetitive punches.

113. On information and belief, the group of Defendants surrounding the Plaintiff, and attacking him, was comprised of the following Defendants, based on police reports identifying their positions and /or responses, as follows: Frey, Moyer, Karnish, Krasley, Hough, Milkovitz, Faulkner, Motz, and Kulp.

114. Defendants Boyer, Mriss, Nicolletti, Fey, Lake, Sannie, Cruz, and unknowns, are not excluded from being part of the group of attackers described above, as police reports identify them as having been involved in the surveillance operation, thus they were present at the scene of the arrest /attack.

115. Police reports also identify Defendants Boyer, Lake, Moyer, and Kulp, as being present on the scene of the arrest /attack, at the passenger side of the Chevy Tahoe, arresting the passanger, Amber Love Breeland. This does not exclude these Defendants from having participated in the attack of the Plaintiff, as they may have thrown punches and kicks, then broke away from the attacking group, to deal with the passenger.

116. Immediately following the parade of punches described in paragraph 111 herein, the Plaintiff was thrown down to the ground, face down, by the Defendants, group attacking him.

117. The Defendants, group attacking him, continued to punch and now kick the Plaintiff, about his face and head, while on the ground.

118. The Plaintiff, in response to the attack described in paragraph 117

herein, immediately placed his arms and hands around his face and head, in an attempt to protect himself, and shield the punches and kicks.

119. The Defendants, group of attackers, continued to punch and kick the Plaintiff about his face and head, while the Plaintiff remained in his defensive position described in paragraph 118 herein.

120. The Plaintiff heard one of his attackers, Defendant unknown, say, "This is for fucking with the cops".

121. Up to this point in time, the Plaintiff was unaware the group attacking him were police officers, and became aware, upon hearing the statement described in paragraph 120 herein.

122. While the Plaintiff was under attack as described herein, he was extremely afraid.

123. One of the kicks delivered to the Plaintiff's left side of the head, by Defendant specifically unknown, wounded him deeply, and the Plaintiff began to bleed.

124. The Defendants, group attacking him, continued to punch and kick the Plaintiff in the face and head, even while the Plaintiff was now bleeding profusely.

125. The punches and kicks continued to land on and around the open wound on the Plaintiff's head.

126. The Plaintiff grunted in pain from the extreme pain felt to the left side of his head.

127. One of the Defendants, specifically unknown, in the group attacking him, began mocking the Plaintiff's cries of pain.

128. Moments after the mocking, the attack ceased, and the Plaintiff was immediately handcuffed behind his back.

129. As the Plaintiff was picked up off the ground, he looked all around

him, and noticed many men surrounding him, who are believed to be the Defendants listed by name herein, in paragraphs 113 - 114.

130. On information, personal knowledge, and belief, Defendant Motz led the Plaintiff to a patrol car. The Plaintiff noticed a great crowd of civilian onlookers.

131. At this point, the Plaintiff informed the Defendant, believed to have been Motz, that he did not know that there was a vehicle behind him.

132. On information, personal knowledge, and belief, upon arriving at Police Headquarters, and still bleeding profusely, the Plaintiff informed Defendant Motz, Captain Medero, and Officer Koziel, that he had been assaulted and beat up by unknown police officers.

133. The Plaintiff was transported to Sacred Heart Hospital, in Allentown, Pa., for medical treatment.

134. On information and belief, upon arrival at the hospital, the Plaintiff was evaluated /treated by hospital staff only known as "Quadrado and Hoonani," for a laceration to the left side of the head, and multiple contusions to the head and face.

135. The Plaintiff received approximately four stitches in his head to close the open wound /laceration referred to in paragraphs 123 and 134 herein.

136. Upon information, personal knowledge, and belief, Defendant Motz and Officer Koziel transported the Plaintiff back to Police Headquarters, and placed him in Cell # 1 for processing.

137. While in Cell # 1, Defendant Mriss, accompanied by a State Trooper known as Michael Wegscheider, approached the Plaintiff. (Trooper Wegscheider was from P.S.P. Reading, Troop L.)

138. Trooper Wegscheider asked the Plaintiff "How are you doing?" The Plaintiff responded, "Not too good, I was beat up by a bunch of police officers",

or words close to that effect.

139. On information, personal knowledge, and belief, at some point, the Plaintiff was taken to a room, and photographs of his injuries to his face and head, were taken by I.D. Officer M. May. The photographs taken were of the front, rear, left, and right sides of the Plaintiff's head and face.

140. The Plaintiff informed this person believed to have been I.D. Officer M. May, that he had received his injuries from being assaulted by the police.

141. Subsequently, the Plaintiff read false reports written by Defendants Kulp, Karnish, and Moyer, falsely alleging, amongst other falsifications, that the Plaintiff had put up a resistance to the arrest, by failing to abide by verbal orders being given, and /or by elbowing, kicking, and struggling during the arrest.

142. The Plaintiff was not given any verbal orders of any kind, while he was being assaulted, nor did any of the Defendants named in paragraphs 113 - 114 herein properly identify themselves as police officers to the Plaintiff.

143. At no point in time, other than the defensive shielding position he took as described in paragraph 118 herein, did the Plaintiff attempt to defend himself, nor did he elbow, kick, push, struggle, or otherwise resist, against the barrage of serial punches and kicks being delivered to his head and face.

144. If some of the Defendants named in paragraphs 113 - 114 herein, did not actively punch or kick the Plaintiff, they still failed to put a stop to the assault, or to intervene and protect the Plaintiff.

145. Furthermore, at no point in time, while the Plaintiff was on the ground, did he place his hands underneath his body, as falsely described by Defendant Karnish in his written report.

146. It is believed that the motive and the reason for the false reports provided, was to cover up the unlawful assault that was committed.

147. The Plaintiff has uncovered other instances of police brutality and assault, committed by members of the Allentown Police Department, and Lehigh County Drug Task Force, and believes his assault is not an isolated incident, but a pattern of police brutality and abuse, that has been occurring for an extensive period of time. Some other relevant instances include, but are not limited to, the following:

148. On information and belief, on September 2, 2005, Defendant Frey, and two other members of the Allentown Police Department, raided the home of a woman named Felicita Torres, at 538 Green Street, Allentown, Pa., and handcuffed Ms. Torres, then repeatedly beat her head and face with a blunt object. None of the police officers attempted to protect Ms. Torres, or interrupt the assault, which continued until other police officers arrived. Please see Felicita Torres v. City of Allentown, et al, 2008 U.S. Dist. LEXIS 50522, Civil Action No. 07-1934.

149. On information and belief, in the case of Eldridge v. Diehl, 2011 U.S. Dist. LEXIS 10011, Civil Action No. 10-3537, a member of the Allentown Police Department, named Matthew Diehl, punched and kicked a citizen named Anthony Eldridge, in the face, in excess of fifteen ( 15 ) times, while Mr. Eldridge was on the ground.

150. While incarcerated at Lehigh County Prison, the Plaintiff was housed on the violent offenders' unit, where inmates who had allegedly assaulted police officers were housed.

151. While there, the Plaintiff witnessed inmates coming in from off the streets, with facial injuries. The Plaintiff spoke with these different individuals, and the majority alleged that they had been assaulted by the police without provocation, and that they were falsely being charged with assaulting the police.

152. In May 2013, the Plaintiff spoke with an inmate at Lehigh County

Prison, whose identity the Plaintiff would like to keep confidential, until after that person's criminal charges have been resolved. The inmate is afraid that the prosecutor will recommend a stiffer sentence in his case, if his name is revealed at this time.

153. This confidential source, referred to in paragraph 152 herein, informed that    Defendant Krasley, and others, punched and smacked him in the face, several times, during his arrest, without provocation. The Plaintiff has a written statement from this source, in his possession, and plans to reveal it to this Court, and all interested parties, in the near future.

154. The Plaintiff looked at this confidential source's I.D. picture, and did notice injuries to his face, including a black eye.

155. The Plaintiff read this confidential source's criminal complaint, which was filed by Defendant Krasley, and read something that immediately jumped out at the Plaintiff, as follows: Defendant Krasley alleged that the confidential source had placed his arms underneath his body, and had resisted by preventing his arms from being pulled out.

156. Police reports in the Plaintiff's case, filed by Defendant Karnish, alleged exactly the same thing, using identical, or similar language, i.e., "the [suspect] placed his arms underneath his body......."

157. The Plaintiff asked the confidential source if he had placed his arms underneath his body as Defendant Krasley alleged. The confidential source informed that he did not, and that Defendant Krasley lied.

158. Comparing Defendants Karnish's and Krasley's reports to each other, in the Plaintiff's and the confidential source's cases, side by side, it is clear, that members of the Vice and Intelligence Unit, of the Allentown Police Department, of which Defendants Karnish and Krasley are both members of, routinely use the language "the [suspect] placed his arms underneath his

body........", or other similar language, to justify and cover up, routine beatings and assaults, being committed by these Defendants, and other members of the Allentown Police Department, and Lehigh County Drug Task Force.

159. Also in 2013, the Plaintiff spoke with yet another person who wishes to keep his identity concealed, until such time as his criminal case is resolved, for fear of retaliation.

160. This second confidential source explained to the Plaintiff that in 2011, in Allentown, Pa., Defendant Fey, and other members of the Allentown Police Department, arrested him and his sister. This confidential source stated that Defendant Fey punched him in the face after he was handcuffed, and that his sister was seriously assaulted by the police officers, causing serious injuries to her face, and body, including broken bones.

161. The Plaintiff plans to reveal the identity of this second confidential source, and obtain a statement from him and his sister, in the near future.

162. On information and belief, the abuses set forth above, involving others, as well as the Plaintiff himself, as described herein, i.e., police brutality, assault, excessive and unnecessary force, failure to intervene and protect, falsifying police reports to cover up misconduct, was consistent with an institutionalized practice of the Allentown Police Department, its Criminal Investigations Division, its Vice and Intelligence Unit, and the Lehigh County Drug Task Force, which was known to, and ratified by Defendants, individual police officers, County of Lehigh, City of Allentown, unknown Chief of Police, and supervisors listed by name herein, in paragraphs 10 through 21, 25 through 29, and 31 through 34, having at no time taken any effective action to prevent police personnel from continuing to engage in such misconduct.

163. On information and belief, Defendants County of Lehigh, City of Allentown, unknown Chief of Police, and supervisors, listed by name herein, in

paragraphs 31 through 34, had prior notice of the vicious propensities of some of
these Defendants listed by name herein, in paragraphs 10 through 21, and 25
through 29, but took no steps to train them, correct their abuse of authority, or
discourage their unlawful use of authority. The failure to properly train these
Defendants, included the failure to instruct them in applicable provisions of the
U.S. Constitution and Pennsylvania State law, and with proper and prudent use of
force.

164. On information and belief, Defendants County of Lehigh, City of
Allentown, unknown Chief of Police, and supervisors, listed by name herein, in
paragraphs 31 through 34, authorized and tolerated as institutionalized
practices, and ratified the misconduct herein before detailed, by:

a) Failing to properly discipline, restrict, and control employees known to
be irresponsible in their dealings with citizens of the community;

b) Failing to take adequate precautions in the hiring, promotion, and
retention of police personnel;

c) Failing to forward to the Office of the District Attorney of Lehigh
County, evidence of criminal acts committed by police personnel, and;

d) Failing to establish and /or assure the functioning of a bonafide and
meaningful department system, for dealing with complaints of police misconduct,
but instead, responding to such complaints with bureaucratic power, and official
denials, calculated to mislead the public. This conduct also constitutes gross
negligence under State law.

165. As a consequence of the abuse of authority detailed above, Plaintiff
sustained the damages alleged herein.

### Federal Causes of Action

166. Plaintiff repeats, reiterates, and realleges, each and every
allegation contained in paragraphs 36 through 165, of this complaint, with

-25-

the same force and effect as if fully set forth herein.

167. The hereinbefore described actions of defendants individual police officers, as identified herein, by name, in paragraphs 10 through 21, and 25 through 28, and 30, acting under color of state authority, in using physical force against the plaintiff that was excessive, and/or unreasonable, and/or unnecessary, and/or intentional, maliscious, and sadistic; and/or in failing to intervene/protect to prevent the misuse of force; and/or in writing false reports designed to cover up their own, or the misconduct and unlawful act of another; deprived the plaintiff of rights secured to him by the Constitution of the United States, under the fourth amendment to be free from the unlawful, or unreasonable seizure of his person; under the fifth and fourteenth amendments, a violation of due process, where the force used was unjustified, and arbitrary; and under the sixth and eighth amendments to be free from punishment without the benefit of a jury trial, and against cruel and unusual punishment.

168. Defendants individual police officers, as identified in paragraph 167 herein, and Detective Weaver, further violated the plaintiff's rights, in that they: (1) exceeded the scope of the June 3, 2011, search warrant, in violation of the fourth amendment to the U.S. Constitution, to be free from unlawful, or unreasonable searches; (2) entrapped the plaintiff into unwillingly placing a firearm upon his person, in violation of the plaintiff's due process rights, under the fifth and fourteenth amendments to be free arbitrary government action; and (3) did endanger the plaintiff's life, and caused him injury, by failing to make the arrest before the plaintiff came into possession of a weapon, where ample opportunities existed to arrest prior to possession, in violation of the fourth, fifth, sixth, eighth, and fourteenth amendments to be free from unreasonable seizures

and arbitrary government action.

169. Defendants unknown Police Chief, and unknown supervisors, acting
under color of law, intentionally, negligently, and with complete, and
deliberate indifference to plaintiff's rights, caused plaintiff to be
deprived of his constitutional rights under the fourth, fifth, sixth,
eight, and fourteenth amendments to the U.S. Constitution, by:

a) failing to supervise properly the training and conduct of
defendants individual police officers.

b) failing to enforce the laws of the federal and state constitutions
concerning the use of force, making proper arrests, and executing search
warrants in a lawful manner, by members of the police force.
Plaintiff's injuries and deprivations of constitutional rights were
proximately caused by defendants unknown Police Chief's, and unknown
supervisor's:

a) inadequate supervision of the training and conduct of defendants
individual police officers;

b) failure to enforce the laws of Pennsylvania and the provisions
of both the federal and state constitutions; and

c) authorizing, permitting, and tolerating the custom and practice
of the unconstitutional and excessive use of force, by members of the
Allentown Police Department, and Lehigh County Drug Task Force; and

d) knowingly accepting false written reports from their subordinates,
designed to cover up unlawful acts, and misconduct;
Thereby proximately causing the deprivation of plaintiff's rights under
the fourth, fifth, sixth, eighth, and fourteenth amendments to the U.S.
Constitution.

170. Defendants City of Allentown, and County of Lehigh, acting under

-27-

color of law, intentionally, negligently, and with complete, and
deliberate indifference for plaintiff's rights, authorized, permitted,
and tolerated the custom and practice, of the unconstitutional and
excessive use of force, by members of the Allentown Police Department,
and Lehigh County Drug Task Force, and in particular, by the individual
police officers of this action; by failing to:

a) Appoint, promote, train, and supervise, members of the Allentown
Police Department, and Lehigh County Drug Task Force, who would enforce
the laws in effect, and who would protect the constitutional rights of
the citizens of the U.S., and residents of the State of Pennsylvania, and
City of Allentown;

b) require defendant unknown Police Chief to promulgate procedures
and policies, for the use of force, making proper arrests, and executing
search warrants in a lawful manner, consistent with the fourth, fifth,
sixth, eighth, and fourteenth amendments to the U.S. Constitution; and

c) by permitting the policy and custom of using unreasonable force,
via routine beatings and assaults, to exist, and to be followed by the
Allentown Police Department, and Lehigh County Drug Task Force; and

d) by knowingly accepting false written reports, by defendants
individual police officers, designed to cover up misconduct and unlawful
acts;
Thereby proximately causing the deprivation of plaintiff's rights under
the fourth, fifth, sixth, eighth, and fourteenth amendments to the U.S.
Constitution.

## State Tort Claims

171. Plaintiff repeats, reiterates, and realleges, as part of these
claims, each and every allegation contained in paragraphs 36 through 165

-28-

of this complaint, with the same force and effect, as if fully set forth
herein.

172. The defendants individual police officers, identified by name
herein, in paragraphs 10 through 21, 25 through 28, and 30, did act in
concert with one another, in that two or more of them did unlawfully
assault the plaintiff, in the manner described hereinbefore, and/or mocked
the plaintiff while he was being beaten, and/or failed to fulfill their
duty as police officers to intervene/protect the plaintiff, from
continuing to be assaulted, and/or provided false written reports
concerning the incident, in an attempt to cover up, and justify, the
assault upon the plaintiff's person, which did result in the plaintiff's
injuries as described hereinbefore; said conduct being a violation of the
Pennsylvania Constitution, and the laws of Pennsylvania, constituting the
common law torts/theories of Civil Conspiracy, Assault and Battery, Gross
Negligence, and Negligence.

173. The defendants individual police officers as identified in
paragraph 172 above, along with Detective Weaver, did further commit
unlawful acts, acting in concert with one another, in that two or more
of them did: (1) exceed the scope of the June 3, 2011 warrant, in failing
to immediately arrest the plaintiff upon locating him; (2) in entrapping
the plaintiff into unwillingly placing a firearm upon his person prior
to his arrest; (3) in endangering the plaintiff's life, and injuring him,
by deciding to wait until he was in possession of a firearm before
arresting, when ample opportunities existed to arrest without that danger;
and (4) in waiting until the plaintiff was behind the wheel of a moving
vehicle before arresting, when ample opportunities existed to arrest him
outside of the vehicle, without accident, or danger; said conduct being

a violation of the Pennsylvania Constitution, and the laws of
Pennsylvania, constituting the common law torts/theories of Civil
Conspiracy, Gross Negligence, and Negligence.

174. The conduct of defendants unknown Police Chief, and unknown
supervisors, in failing to properly train, supervise, and control the
conduct of defendants individual police officers, constitutes Gross
Negligence, and Negligence, under the common law torts/theories of
Pennsylvania.

175. Defendants City of Allentown, and County of Lehigh, as the
employer of defendants unknown Police Chief, unknown supervisors, and
individual police officers, is liable under the doctrine of respondeat
superior, for the gross negligent, and negligent conduct, of it's
employees, the herein mentioned defendants.

## Relief Requested

**Wherefore,** plaintiff respectfully requests that this Honorable Court
grant the following relief:

A. Issue a declatory judgment stating that:

1. The physical abuse of the plaintiff, and/or the failure to
intervene and protect the plaintiff against said physical abuse, and the
writing of false reports to cover up the physical abuse, by defendants,
police officers: Matthew M. Karnish, Stephen J. Milkovitz III, Kevin R.
Mriss, Kyle Hough, William Lake, Raymond Sannie, Todd Frey, Mark Boyer,
Chad Moyer, Randy Fey, William Faulkner, Jason Krasley, Justin M. Motz,
Robert J. Kulp, Christopher Cruz, Thomas Nicolletti, and, other unknowns,
violated the plaintiff's rights under the fourth, fifth, sixth, eighth,
and fourteenth amendments to the U.S. Constitution, and constituted a
Civil Conspiracy, Assault and Battery, Gross Negligence, and Negligence,

-30-

under Pennsylvania Law; and

2. further that the actions of the defendants individual police officers, named immediately above, together with Detective Weaver, in: (1) deciding to ignore the warrant for the plaintiff's arrest out of Allegheny County; in (2) going on a fishing expedition, by surveillance; in (3) entrapping the plaintiff into obtaining a firearm first, before making an arrest; in (4) willfully heightening, and making the arrest life threatening, when it could have been avoided, or prevented; in (5) wrongfully, intentionally, maliciously, and sadistically assaulting the plaintiff; and in (6) providing false written reports attempting to cover up the unlawful assault; that said conduct, in it's totality, is repugnant to the Constitution of the U.S., and laws of Pennsylvania, and did violate the plaintiff's rights under the fourth, fifth, sixth, eighth, and fourteenth amendments to the U.S. Constitution, and constituted a Civil Conspiracy, Assault and Battery, Gross Negligence, and Negligence, under Pennsylvania State Law; and

3. that defendants unknown Police Chief, and unknown Supervisors, City of Allentown, and County of Lehigh's failure to take action to curb the pattern of physical abuse, of which plaintiff and many others have been a victim of, violated the plaintiff's rights under the fourth, fifth, sixth, eighth, and fourteenth amendments to the U.S. Constitution, and constituted Civil Conspiracy, Assault and Battery, Gross Negligence, and Negligence, under Pennsylvania State Law.

B. Issue an injunction ordering the City of Allentown, County of Lehigh, Chief of Police, and supervisors, to:

1. immediately invalidate the striking, punching, and kicking of, an arrestee's face and head area, or before other measures are first tried, and proved ineffective;

-31-

2. require that all pre-planned arrests be recorded with video and audio.

C. Award to plaintiff compensatory damages in an amount to be determined at trial, but not less than the amount of 100,000 dollars, jointly and severally, against all defendants, for the matters alleged in this complaint, and for the permanent scar the plaintiff has from the laceration to his head.

D. Award to plaintiff punitive damages in an amount to be determined at trial, against every and each defendant severally, except defendants City of Allentown, and County of Lehigh.

E. Grant such and other further relief as the Court may deem appropriate, under the circumstances.

Respectfully Submitted,

Date: 9/16/13

/s/ Jose L. Torres

Jose Luis Torres, Pro se
KK-9715
SCI Smithfield
P.O. Box 999
Huntingdon, Pa 16652

-32-

## Proof of Service

I, Jose Luis Torres, hereby certify that I am on this day, serving the foregoing: "Amended Complaint," upon the persons listed below, by first class U.S. mail:

I, Jose Luis Torres, also state under penalty of perjury that the forgoing facts set forth in the within Amended Complaint, are true and correct, to the best of my information, knowledge, and belief:

Michael E. Kunz
Clerk of Court
United States District Court
Eastern District of Pennsylvania
U.S. Courthouse
Independence Mall West
601 Market Street
Philadelphia, Pa 19106-1797

Andrew B. Adair, Esq.
103 Chesley Drive, Suite 101
Media, Pa 19063

Susan E. Wild and Graig M. Schultz, Esq.
33 S. 7th Street
P.O. Box 4060
Allentown, Pa 18105-4060

Lisa R. Cipoletti
Chief Deputy District Attorney
455 W. Hamilton Street
Allentown, Pa 18101

Date: 9/16/13          /s/ _Jose L. Torres_

Jose Luis Torres, Pro se
KK-9715
SCI Smithfield
P.O. Box 999
Huntingdon, Pa 16652