IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSE LUIS TORRES | : | CIVIL ACTION |
| | : | NO. 13-3066 |
| v. | : | |
| | : | |
| ALLENTOWN POLICE DEPARTMENT, | : | |
| et al. | : | |

O'NEILL, J.                                                                                     August 18, 2014

## MEMORANDUM

Before me are motions to dismiss plaintiff's amended complaint filed by defendants the
City of Allentown, County of Lehigh, "unknown" Chief of Police and supervisors, police
officers Detective Todd Frey, Detective Sergeant Christopher Cruz,[1] Detective Weaver, Thomas
Nicoletti,[2] Michael Faulkner, Randy Fey, Kyle Hough, Matthew Karnish, William Lake, Stephen
Milkovitz III, Kevin Mriss, Raymond Sannie, Mark Boyer, Jason Krasley, Justin Motz and
Robert Kulp, and plaintiff Jose Luis Torres's responses thereto.  Plaintiff, proceeding pro se and
in forma pauperis, asserts claims for alleged violations of his constitutional rights under the
Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments pursuant to 42 U.S.C. §§ 1983 and
1988,[3] and claims for civil conspiracy, assault and battery, negligence and gross negligence

---

[1]        Frey and Cruz are detectives on the Lehigh County Drug Task Force.  Dkt. No. 43
at ECF pp. 2-3.

[2]        Nicoletti is an Upper Saucon Township police officer.  All other individual
defendants, including "unknowns," are Allentown police officers or detectives.

[3]        Although plaintiff's amended complaint cites § 1988, Dkt. No. 39 at ¶ 7, it is fee-
shifting statute, not a source of liability.  Under § 1988, the prevailing party in certain civil rights
actions may recover reasonable attorney's fees as part of the costs.  42 U.S.C. § 1988(b).
Determination of whether plaintiff is entitled to an award under§ 1988 is premature pending the
final disposition of this action.

under Pennsylvania state law.  Plaintiff requests compensatory damages, punitive damages, a declaratory judgment and injunctive relief.  For the following reasons, I will grant defendants' motions in part and deny them in part.

## BACKGROUND

On June 3, 2011, Judge Kelly Banach of the Lehigh County Court of Common Pleas granted defendant police officer Mark Boyer's search warrant application for plaintiff.  Dkt. No. 39 at ¶ 40.  Plaintiff alleges that as probable cause for the search warrant Boyer "used the fact that an active warrant out of Allegheny County" existed for plaintiff.[4]  Id. at ¶ 39.  Plaintiff contends that the scope and objective of the search warrant was limited to locating and "immediately" arresting him upon being found.  Id. at ¶ 41.

Plaintiff alleges that, pursuant to the warrant, defendant police officers Boyer, Kevin Mriss and other "unknown" police officers, joined by police officer Thomas Nicoletti, arrived on June 3 outside plaintiff's residence in Center Valley, Pennsylvania.  See id. at ¶¶ 42-43.  Plaintiff asserts that the officers confirmed his location inside his residence but did not arrest him.  Id. at ¶ 44.  Plaintiff exited his house with his friend, Amber Bree Loveland, they entered his vehicle and he drove her from Center Valley to his garage located in Allentown, Pennsylvania.  Id. at ¶¶ 47-48.  Plaintiff alleges that the aforementioned officers, now joined by defendant officer Christopher Cruz, id. at ¶ 50, surveilled him while he was in his garage, then followed him to the 600 block of North 7th Street in Allentown.  Id. at ¶ 53.  There, the previously identified officers were allegedly joined by defendant officers Kyle Hough, Matthew Karnish, Jason Krasley and other unknown officers.  See id.

Plaintiff alleges that while he was on the 600 block of North 7th Street, Detective Weaver

---

[4]        Plaintiff does not contest the validity of his arrest warrant.

"called [ ] plaintiff's phone, by using a friend of [ ] plaintiff's, known as 'Haley'" to inquire about obtaining a gun from plaintiff. Id. at ¶ 54. Plaintiff contends that he informed Haley that he did not have any guns nor could supply her with one and ended the call. Id. at ¶ 55. Plaintiff alleges that he received a second call from Haley, id. at ¶ 57, followed by a third call requesting that he obtain a gun for her in return for a payment of $400. Id. at ¶ 64. Plaintiff agreed to Haley's request to obtain a 9mm pistol and agreed to meet her at her residence. Id. at ¶¶ 65, 67. Plaintiff alleges that the police surveillance team followed him while he drove back to his garage in Allentown. Id. at ¶¶ 68-69. He also alleges that the unknown officer in charge of the surveillance team advised the other officers that although he was ready to execute plaintiff's arrest warrant they were to "wait until after the plaintiff became armed with the 9mm weapon." Id. at ¶ 71. Plaintiff exited his vehicle, opened his garage door and stepped inside the garage. Id. at ¶ 75.

Plaintiff alleges that defendant officers Justin Motz, Robert Kulp, Todd Frey, Michael Faulkner, Stephen Milkovitz, Randy Fey, William Lake, Raymond Sannie, Karnish, Krasley, Hough, Boyer, Mriss, Nicoletti, Cruz and other "unknowns" stationed themselves on the streets around plaintiff's garage. Id. at ¶¶ 77-88. Plaintiff claims that he entered his vehicle with an unloaded 9mm firearm in a white bag which he placed on the floorboard of his vehicle and then proceeded to drive the vehicle out of the garage with Loveland as his passenger. Id. at ¶ 93; see id. at ¶¶ 102, 115. While heading down an alleyway a short distance from his garage, plaintiff alleges that a man wearing civilian clothing and brandishing a firearm ran towards the front of his vehicle, stopped approximately 50 feet away, pointed his gun at the windshield and yelled, "get out of the car." Id. at ¶ 96. Plaintiff asserts that, "upon information and belief," from his reading of police reports, the identity of the gunman is "more likely than not" Frey or Moyer. Id.

at ¶ 98.  Plaintiff claims that the gunman did not flash a police badge at him.  Id. at ¶ 100.

Plaintiff shifted his vehicle into reverse, "stepped heavily on the gas pedal" and crashed into a

vehicle allegedly driven by Hough.  Id. at ¶¶ 102, 105, 106.

Plaintiff alleges that he opened his driver's side door and was immediately grabbed from

behind "by unseen defendants."  Id. at ¶ 109.  When he was grabbed, he alleges that the gunman

ran up to him and punched him repeatedly in the face through the open driver's side window.  Id.

at ¶¶ 109-10.  Plaintiff claims that immediately following the alleged gunman's punches, "a

parade of punches began to land about [his] face and head, from all angles, from multiple

defendants surrounding him."  Id. at ¶ 111.  He alleges that he was thrown to the ground and

officers continued to punch and kick his face and head while he "remained in his defensive

position" shielding his face and head with his arms and hands.  Id. at ¶¶ 116-19.  Plaintiff

contends that one of the kicks wounded the left side of his head which began to bleed.  Id. at

¶ 123.  He alleges that officers continued to punch and kick him on and around his open wound

while he was on the ground and that an officer "began mocking [his] cries of pain."  Id. at ¶¶

125-27.  Plaintiff claims he heard an unknown attacker say "[t]his is for fucking with the cops."

Id. at ¶ 120.  He also contends that he "did not attempt to defend himself, nor did he elbow, kick,

push, struggle, or otherwise resist, against the barrage of serial punches and kicks being

delivered to his head and face."  Id. at ¶ 143.

Plaintiff concedes that he "could not see who was hitting him."  Id. at ¶ 112.  However,

he alleges his attackers were Frey, Moyer, Karnish, Krasley, Hough, Milkovitz, Faulkner, Motz

and Kulp "based on police reports identifying their positions and/or responses."  Id. at ¶ 113.

Plaintiff further alleges that Boyer, Mriss, Nicoletti, Fey, Lake, Sannie, Cruz and other unknown

defendants "are not excluded from being part of the group of attackers . . . as police reports

identify them as having been involved in the surveillance operations, [and] thus they were present at the scene of the arrest/attack." Id. at ¶ 114.  Plaintiff also contends that police reports identify Boyer, Lake, Moyer and Kulp as being at the scene of his arrest/attack at the passenger side of his vehicle arresting Loveland and thus they are not excluded from having participated in his attack "as they may have thrown punches and kicks, then broke away from the attacking group, to deal with the passenger." Id. at ¶ 115.

Plaintiff subsequently pled nolo contendere to Resisting Arrest (18 Pa. Cons. Stat. § 5104) and pled guilty to Possession of a Firearm (18 Pa. Cons. Stat. § 6105(A)(1)) and Receiving Stolen Property (18 Pa. Cons. Stat. 3925 (A)).  Dkt. No. 42-4 (Ex. A); Dkt. No. 42-5 (Ex. B).[5]

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). Typically, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," though plaintiff's obligation to state the grounds of entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact)." Id. (citations omitted).  This "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. Id. at 556.  The Court of Appeals has made clear that after Ashcroft v. Iqbal, 556 U.S. 662 (2009), "conclusory or 'bare-bones'

---

[5]        Lehigh Cnty. Ct. Comm. Pls. Dkt. Nos. CP-39-CR-0002828-2011 and CP-39-0002822-2011.

allegations will no longer survive a motion to dismiss: 'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'  To prevent dismissal, all civil complaints must now set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009), quoting Iqbal, 556 U.S. at 678.  The Court also set forth a two part-analysis for reviewing motions to dismiss in light of Twombly and Iqbal:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."

Id. at 210-11, quoting Iqbal, 556 U.S. at 679.  The Court explained, "a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to 'show' such an entitlement with its facts." Id., citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679, quoting Fed. R. Civ. P. 8(a)(2).

Because plaintiff is proceeding pro se, I "must liberally construe his pleadings, and . . . apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name." Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).  "[H]owever inartfully pleaded," pro se pleadings must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also U.S ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (noting that a petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").  Prisoners in particular are often at an informational disadvantage that may prevent them from pleading the full factual predicate for

their claims.  Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004).  Unless amendment would be inequitable or futile the Court should not dismiss a complaint without allowing plaintiff leave to amend.  Id. at 235 (3d Cir. 2004), citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

Finally, I must sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b) (applying to plaintiff who is a prisoner proceeding in forma pauperis).  "The legal standard for dismissing a complaint for failure to state a claim under [the Prison Litigation Reform Act] is the same as that for dismissing a complaint pursuant to a motion filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  Aruanno v. Green, 527 F. App'x 145, 147 (3d Cir. 2013).

## DISCUSSION

### I.      Claims under Section 1983

Section 1983 does not create substantive rights but provides a remedy for the violation of federal constitutional or statutory rights.  In order to state a claim for relief under § 1983, plaintiff must sufficiently allege that:  (1) defendants acted under the color of state law; (2) and he was deprived of his rights, privileges, or immunities secured by the Constitution or laws of the United States as a result of the action(s).  See West v. Atkins, 487 U.S. 42, 48 (1988).

### A.      Monell Liability:  City of Allentown and Lehigh County[6]

To the extent that plaintiff asserts claims against Allentown and Lehigh County, I find that he has not sufficiently alleged the elements required for a finding of § 1983 liability under Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 659 (1978).

---

[6]      Allentown is a city located in Lehigh County.

Consistent with Monell, in order to impose liability on a local governmental entity for failing to act to preserve constitutional rights, a § 1983 plaintiff must establish not only that the was deprived of a constitutional right, but that:  (1) the municipality had a policy; (2) the policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (3) the policy is the "moving force behind the constitutional violation."  City of Canton, Ohio v. Harris, 489 U.S. 378, 389-91 (1989).

        To prevail on a municipal liability claim under a theory of deliberate indifference, a plaintiff must "'establish a municipal custom coupled with causation—i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [plaintiff's] injury.'"  Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996), quoting Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990); see also Bielevicz, 915 F.2d at 851 (noting that the deliberate indifference standard is adopted by courts in policy and custom contexts).  The inadequacy of training may serve as a basis for municipal liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Canton, 489 U.S. at 388; see also id., at 391 ("respondent must still prove that the deficiency in training actually caused the police officers' indifference").  "Failure to . . . train municipal employees can ordinarily be considered deliberate indifference only where the failure has caused a pattern of violations."  Berg v. Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000) (per curiam), citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 408-09 (1997).[7]

---

        [7]        For liability to attach in this circumstance "the identified deficiency in the training program must be closely related to the ultimate injury."  Canton, 489 U.S. at 391.  In the absence of evidence suggesting a pattern of similar violations, a single violation in "a narrow range of circumstances" may suffice only if it is a "highly predictable consequence" of a city's decision not to train officers.  Connick v. Thompson, 131 S. Ct. 1350, 1361 (2011), citing Bryan Cnty.,

Plaintiff claims that Allentown and Lehigh County had a policy and custom of authorizing, permitting, and tolerating the custom and practice of the unconstitutional and excessive use of force by members of the Allentown Police Department.  See Dkt. No. 39 at ¶ 170.  Plaintiff contends that the City and County allegedly failed to:  (1) hire, promote, train and supervise members of the Allentown Police Department; (2) require "unknown" Police Chief to promulgate policies and procedures for the use of force in a constitutional manner by permitting a policy and custom of using unreasonable force and by knowingly accepting false police reports.  Id.

Plaintiff has not sufficiently alleged the existence of a policy or custom or a pattern of violations by Allentown or Lehigh County.[8]  Plaintiff alleges that Allentown was aware of prior instances of excessive force because of the plaintiffs' allegations in (Felicita) Torres v. City of Allentown, No. 07-1934, 2008 WL 2600314 (E.D. Pa. June 30, 2008), and Eldridge v. Diehl, No. 10-3537, 2011 WL 323111 (E.D. Pa. Feb. 1, 2011).  However, the Courts in both Torres and Eldridge found that the respective plaintiffs failed to sufficiently allege a policy or custom of the

---

520 U.S. at 397, 409.  Plaintiff here has not pleaded sufficient facts to bring his claim within the narrow category of single-incident liability.

[8]      A policy is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986), superseded in part by statute, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072 (1991), as recognized in Francis v. Carroll, 659 F. Supp. 2d 619, 626 (D. Del. 2009).  A course of conduct not expressly authorized by law constitutes "custom" with the force of law where it is "permanent" and "well settled." Monell, 436 U.S. at 691, citing Adickes v. S. H. Kress & Co., 398 U.S. 144, 167-68 (1970).  To prevail on a municipal liability claim under a theory of deliberate indifference, a plaintiff must "'establish a municipal custom coupled with causation—i.e., that policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to [plaintiff's] injury.'"  Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996), quoting Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990).

City and dismissed their <u>Monell</u> claims.  <u>See</u> <u>Eldridge</u>, 2011 WL 323111, at *5-6 (holding that

the plaintiff failed to set forth factual allegations that Allentown turned a blind eye to racial

discrimination);[9] <u>Torres</u>, 2008 WL 2600314, at *5 (holding that the plaintiff's complaint lacked

specific factual allegations of any Allentown official municipal policy or custom endorsing

police officers' alleged misconduct).

Even were I to assume their veracity, plaintiff's allegations that two unidentified

inmates[10] – "confidential sources" he met while incarcerated at Lehigh County Prison – were

subjected to excessive force, Dkt. No. 39 at ¶¶ 150-161, also do not support the existence of a

County policy or custom.  <u>See</u> <u>Brown v. City of Pittsburgh</u>, 586 F.3d 263, 293 (3d Cir. 2009)

(noting that a custom generally must be shown to be a pattern; more than a "single incident will

be necessary to establish a causal connection between the incident and some municipal policy.").

Accordingly, I will dismiss plaintiff's <u>Monell</u> claims against the City and the County.  Because

leave to amend should "be freely given when justice so requires," Fed. R. Civ. P. 15(a)(2), I will

grant plaintiff leave to amend to the extent that he can plead with particularity the existence of a

policy, custom, or pattern of violations by the City and/or County.

**B.     Supervisory Liability**

To the extent that plaintiff asserts claims against "unknown Police Chief" and "unknown

---

[9]      Moreover, <u>Eldridge</u> is inapposite because the plaintiff's <u>Monell</u> claim against the
City therein was one of racial discrimination for allegedly "forcibly stopping blacks without
reasonable suspicion of criminal activity or probable cause."  <u>Eldridge</u>, 2011 WL 323111, at *5.

[10]      Plaintiff asserts in his brief in opposition to defendants' motions to dismiss that he
has identified three confidential sources of information in his amended complaint.  <u>See</u> Dkt. No.
58 at ECF p. 49.

supervisors" of Allentown[11] for their alleged failures to supervise and enforce federal and state laws, plaintiff's claims fail because he does not allege sufficient personal involvement of "unknown" defendants with respect to the alleged violation of his constitutional rights.  See Durmer v. O'Carroll, 991 F.2d 64, 69 n.14 (3d Cir. 1993) (holding that without more, the mere fact that a defendant holds a supervisory position is insufficient to prove a cause of action because § 1983 does not support civil rights claims based upon a theory of respondeat superior); Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (holding that a defendant in a civil rights action must have personal involvement in the alleged wrong and liability cannot be predicated solely on the operation of respondeat superior); Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986) (noting that liability may only be imposed where a supervisory official is sued in a civil rights action if the official played an "affirmative" part in the alleged misconduct).

Moreover, while a supervisor may not authorize, encourage or approve constitutional torts, a supervisor also has "no affirmative constitutional duty to train, supervise or discipline so much as to prevent such conduct."  Chinchello, 805 F.3d at 133.  Accordingly, I will dismiss plaintiff's claims against the unknown Chief of Police and police officer "supervisors" of Allentown.  Because to leave amend should be freely given, I will grant plaintiff leave to amend to the extent that he can plead with particularity the personal involvement of Police Chief and/or "unknown" supervisors.

---

[11]     Plaintiff also appears to attempt to add the Mayor of Allentown as a supervisory defendant in his response to defendants' motions to dismiss.  See Dkt. No 58 at ECF p. 52 ("The mayor being the head supervisor of the Allentown Police Force is liable in the instant matter because he has failed to remedy the long standing practice and custom of police brutality . . . .").  Even were I to construe plaintiff's submission as a request to amend his complaint to join the Mayor, plaintiff's claim would still fail because it does not sufficiently allege the Mayor's personal involvement.

C.      **Fourth Amendment**

1.      **Excessive Force**

Plaintiff asserts an excessive force claim under 42 U.S.C. § 1983 against all officer defendants with the exception of the previously discussed "unknown" Police Chief of Allentown and police officer supervisors.  See Dkt. No. 39 at ¶ 167.  I will not dismiss this claim because I find that plaintiff has sufficiently alleged a claim of excessive force.

a.      **Identity of Officer Defendants**

In order to hold the officer defendants liable for the alleged excessive use of force, plaintiff is required to identify the responsible defendants.  McNeil v. City of Easton, 694 F. Supp. 2d 375, 395 (E.D. Pa. 2010); citing Sharrar v. Felsing, 128 F.3d 810, 821 (3d Cir. 1997) (further citations omitted); cf. Munson v. City of Phila., No. 08-5131, 2009 WL 2152280, at *3 (E.D. Pa. July 15, 2009) (granting summary judgment to the defendants where the plaintiff was "unable to identify any of the individual officers that he claims used excessive force against him."); Taylor v. Brockenbrough, No. 98-6419, 2001 WL 1632146, at *2-3 (E.D. Pa. Dec. 20, 2001) (granting summary judgment to the defendant police officers on the plaintiff's excessive force claim where the plaintiff was unable to "identify the exact police officer responsible for [his] alleged beating.").  While plaintiff concedes that "he could not see" who his alleged attackers were and fails to identify whether Frey or Moyer is the alleged gunman, I will not dismiss his claim on the ground that he has insufficiently alleged the identity of the responsible defendants.

At this pleading stage, plaintiff's complaint merely needs to set forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of" the identity of the gunman and/or other defendant officer(s) allegedly involved.  Phillips, 515 F.3d at 234.  If, after

discovery, it is clear that the allegedly responsible officers' identities cannot be identified or if there is sufficient evidence that officers' use of force was reasonable, they may move for summary judgment.  See Reinhart v. PNC Bank, NA, No. 10-7384, 2012 WL 1104685, at *4 (E.D. Pa. Apr. 2, 2012) (denying the defendant officers' motion to dismiss on their argument that plaintiff failed to identify which officers were involved but stating that defendants may move for summary judgment if plaintiff is unable to make the identification after discovery).

### b.      Objective Reasonableness

In considering whether plaintiff has sufficiently alleged his excessive force claim, I must decide whether plaintiff has sufficiently alleged that the defendant officers' conduct was not objectively reasonable.[12]  See Graham v. Connor, 490 U.S. 386, 394 (1989).  Because a reasonableness determination depends on "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force," Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004), the Court of Appeals has held that "[t]he reasonableness of the use of force is normally an issue for the jury." Rivas, 365 F.3d at 198, citing Abraham v. Raso, 183 F.3d 279, 290-91 (3d Cir. 1999).  Therefore, "it is surely premature to expect the Court to make such a resolution [of reasonableness in the use of force] at the motion to dismiss stage, when the only issue before it is to determine whether [p]laintiff['s] [c]omplaint alleges facts that 'plausibly

---

[12]      Proper application of the reasonableness test requires that I pay "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham v. Connor, 490 U.S. 386, 396 (1989).  The Court of Appeals has also noted that other relevant factors to take into consideration include "the duration of the [officers'] action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds by Curley v. Klem, 499 F.3d 199, 209-10 (3d Cir. 2007).

give rise to an entitlement for relief.'" Williams v. Papi, No. 3:13-CV-01151, 2014 WL 3055369, at * 5 (M.D. Pa. July 3, 2014) (emphasis in original), citing Connelly v. Steel Valley Sch. Dist., 706 F.3d 209, 212 (3d Cir. 2013).

Viewing the facts in the light most favorable to plaintiff as I must, plaintiff's allegations that police officers punched him repeatedly in the face, continued to punch and kick his face and open head wound and mocked "his cries of pain" while he was unresisting and in defensive position on the ground, Dkt. No. 39 at ¶¶ 116-19, 123, 125-27, are sufficient at this stage of the proceedings to make out a plausible excessive force claim against the officer defendants.

**2.      Failure to Intervene**

Plaintiff also asserts a claim against the officer defendants for their alleged failure to intervene and protect him from the use of excessive force.  See Dkt. No. 39 at ¶ 167.  Plaintiff can sustain a claim for a Fourth Amendment violation against an officer who did not participate directly in the use of force if that officer failed to intervene despite having had a reasonable opportunity to do so.  Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002), citing Byrd v. Clark, 783 F.2d 1002, 1007 (11th Cir. 1986).[13]  "Courts have held that such an opportunity exists

---

[13]      The Court of Appeals in Mensinger explained:

> [t]he approving silence emanating from the officer who stands by
> and watches as others unleash an unjustified assault contributes to
> the actual use of excessive force, and we cannot ignore the tacit
> support such silence lends to those who are actually striking the
> blows.  Such silence is an endorsement of the constitutional
> violation resulting from the illegal use of force.

Mensinger, 293 F.3d at 651.  While Mensinger's holding was made in the context of an Eighth Amendment excessive force claim against a corrections officer, the Court of Appeals made clear that the holding was applicable to both police officers and corrections officers since both are "sworn to uphold the law and both are authorized to use force (even deadly force) toward that end."  Id.  Courts in our District have applied Mensinger to an alleged Fourth Amendment

-14-

only when excessive force is used in the officer's presence or otherwise within his knowledge, or

if the officer saw his colleague use excessive force or had time to reach him." <u>Bryant v. City of</u>

<u>Phila.</u>, 890 F. Supp. 2d 591, 601 (E.D. Pa. 2012), <u>aff'd</u>, 518 F. App'x 89 (3d Cir. Mar. 15, 2013)

(citations and internal quotations omitted); <u>see also</u> <u>Armbruster v. Marguccio</u>, No. 05-344J, 2006

WL 3488969, at *8 (W.D. Pa. Dec. 4, 2006) (noting that in the inquiry as to officers' "realistic

and reasonable opportunity to intervene, courts consider many factors, including the temporal

length of the alleged assault, the proximity of the non-intervening officer to the alleged assault,

the ability of the non-intervening officer to perceive and/or hear the alleged assault"). "[W]here

all of the named officers were in the vicinity, a plaintiff's uncertainty as to which officers used

excessive force does not negate the officers' potential liability as a matter of law [for failure to

intervene]." <u>Miller v. Woodhead</u>, No. 08-3092, 2011 WL 817556, at *5 (D.N.J. Mar. 2, 2011),

<u>citing</u> <u>Mensinger</u>, 293 F.3d 641.

  The police reports[14] plaintiff attached in his response to defendants' motions to dismiss

indicate that multiple officers were involved in the incident and raise a reasonable expectation

that discovery will reveal whether they may have been in his proximity and/or had a reasonable

opportunity to intervene. <u>See</u> Dkt. No. 58 at ECF pp. 78-82, 86. Accordingly, I will not dismiss

---

violation. <u>See</u> <u>Verdier v. Borough</u>, 796 F. Supp. 2d 606, 625 (E.D. Pa. 2011); <u>Hammock v.</u>
<u>Borough of Upper Darby</u>, No. 06-CV-1006, 2007 WL 3232115, at *5 n.11 (E.D. Pa. Oct. 31,
2007).

[14]   Plaintiff attached various records and reports as exhibits in his response to
defendants' motions to dismiss, including: Lehigh County Arrest and Booking Data Sheet,
Allentown Police Department Offense Reports, Lehigh County Drug Task Force Incident
Reports, and Nicoletti's Application for Search Warrant and Authorization and Affidavit of
Probable Cause in Lehigh County. Dkt. No. 58 (Exs). Here, courts must consider "'the
complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule
12(b)(6) motions to dismiss,' including documents incorporated into the complaint by reference
. . . ." <u>City of Edinburgh Council v. Pfizer, Inc.</u>, No. 13-2314, 2014 WL 2535383, at *3 (3d Cir.
June 6, 2014), <u>quoting</u> <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007).

plaintiff's failure to intervene claim.  See Knight v. Walton, No. 2:12CV984, 2014 WL 1316115, at *9 (W.D. Pa. Mar. 28, 2014) (declining to dismiss plaintiff's failure to intervene claim after finding that the plaintiff's allegations were sufficient to state a plausible claim of excessive force).

### D.   Other Federal Claims

To the extent that plaintiff attempts to assert a constitutional claim against Kulp and Karnish for allegedly preparing a false police report against him, I will dismiss the claim because plaintiff fails to state a cognizable basis for recovery.  "[T]he filing of a false police report is not itself a constitutional violation."  Jarrett v. Twp. of Bensalem, 312 F. App'x 505, 507 (3d Cir. 2009) (quotations and citations omitted).[15]

Plaintiff's Fifth Amendment claim fails to withstand defendants' motions to dismiss because the due process clause of the Fifth Amendment applies only to actions of the federal government and no defendant in the instant action is alleged to be a federal government actor. Colon-Montanez v. Pa. Healthcare Serv. Staffs, 530 F. App'x 115, 118 (3d Cir. 2013); Citizens for Health v. Leavitt, 428 F.3d 167, 178 n.11 (3d Cir. 2005); see U.S. Const. amend. V.

Plaintiff has not alleged facts, even liberally construing his amended complaint, to support a claim for deprivation of any Sixth Amendment right.  See U.S. Const. amend. VI (guaranteeing the right to criminal defendants to a trial without unnecessary delay, the right to

---

[15]      Plaintiff does not contend that the alleged false reports prevented him from pursuing a separate cause of action or hindered his defense in the underlying criminal case.  See Bush v. City of Phila., No. 98-0994, 1999 WL 554585, at *4 (E.D. Pa. July 16, 1999) ("Cases decided in this court and elsewhere show that conspiracy by police officers to file false reports and otherwise cover up wrongdoing by fellow officers is not in and of itself a constitutional violation.  It provides the basis for a § 1983 action only if it results in some constitutional harm to the plaintiff.").  Plaintiff has withdrawn his claims that the officer defendants "entrapped" him and that they exceeded the scope of the June 3, 2011 search warrant.  Dkt. No. 58 at ECF p. 13.

assistance of counsel, to an impartial jury, to be informed of the nature of charges against him and to confront and examine adverse witnesses).

Similarly, plaintiff has not alleged any facts supporting a claim for the deprivation of any Eighth Amendment right in the alleged incident leading to his arrest.  See U.S. Const. amend. VIII (prohibiting excessive bail or fines and the infliction of cruel and unusual punishments on those convicted of a crime).  "[T]he Eighth Amendment's protections against cruel and unusual punishment do not attach until an individual has been both convicted and sentenced for his crimes."  Dec v. Pa. State Police, No. 2:12-cv-565, 2012 WL 6099078, at *7 (W.D. Pa. Dec. 7, 2012), citing Bistrian v. Levi, 696 F.3d 352, 367 (3d Cir. 2012).

Finally, plaintiff's Fourteenth Amendment due process claim fails because his claims are properly brought under the Fourth Amendment.  Where "government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate."  Berg v. Cnty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000).

Because I find that it would be futile to grant plaintiff leave to amend his Fifth, Sixth, Eighth and Fourteenth Amendment claims, I will dismiss these claims with prejudice.

### E.    Qualified Immunity

Frey and Cruz raise the defense of qualified immunity in their motion to dismiss.  Dkt. No. 43 at ECF p. 14.  "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted).  The question of "whether an officer made a reasonable mistake of law and is thus entitled to qualified immunity is a question of law that is properly answered by the court, not a jury."  Curley, 499 F.3d at 211.  The Court of

Appeals has cautioned that "it is generally unwise to venture into a qualified immunity analysis at the pleading stage as it is necessary to develop the factual record in the vast majority of cases." Newland v. Reehorst, 328 F. App'x 788, 791 n.3 (3d Cir. 2009).  A full analysis of whether qualified immunity applies to plaintiff's claims against defendant officers would be premature because there are unresolved questions of fact relevant to the analysis.  Accordingly, I will not decide whether the officers are entitled to a qualified immunity defense at this stage of the case, without prejudice to defendants' ability to later raise the defense.

## II.     Pennsylvania State Law Claims[16]

### A.     Pennsylvania Political Subdivision Tort Claims Act Immunity

Pennsylvania's Political Subdivision Tort Claims Act, 42 Pa. Cons. Stat. §§ 8541 and 8545 et seq., provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. Cons. Stat. § 8541. Allentown and Lehigh County are therefore immune from plaintiff's claims for assault, battery and civil conspiracy under the PSTCA.  See id.  They are also immune from plaintiff's claim for negligence because their alleged acts do not fall within one of the PSTCA's enumerated exceptions to immunity for negligent acts.[17] 42 Pa. Cons. Stat. § 8542(b).  Amendment of

---

[16]     To the extent that plaintiff asserts his claims under the Pennsylvania Constitution, these claims must be dismissed as "[n]o Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution."  Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist., 442 F. App'x 681, 687 (3d Cir. 2011).

[17]     The exceptions from immunity for negligent acts provided by statute are:  (1) vehicle liability; (2) care, custody or control of personal property; (3) real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals.  42 Pa. Cons. Stat. § 8542(b).

plaintiff's negligence, assault and battery and civil conspiracy claims against Allentown and

Lehigh County would be futile under the PSTCA and I will therefore dismiss them with

prejudice.[18]

Likewise, to the extent that the alleged negligent acts of the defendant police officers,

"unknown" Police Chief and supervisors were undertaken within the scope of their employment,

the PSTCA bars plaintiff's negligence claims against them.  See 42 Pa. Cons. Stat. § 8545

(noting that with regard to an official's immunity, employees are liable "to the same extent as his

employing local agency."); Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006).[19]  Amendment of

plaintiff's negligence claims against defendant officers and the police Chief and supervisors

would be futile under the PSTCA and I will therefore dismiss them with prejudice.

The PSTCA does not, however, shield defendant officers or the Police Chief or

---

[18]     Plaintiff also asserts the same claims against Police Chief and unknown
supervisors as he does against the City and County.  See Dkt. No. 39 at ECF p. 33.  Official
capacity claims against the Police Chief and supervisors amount to claims against the City and
County which the PSTCA bars.  See 42 Pa. Cons. Stat. § 8545.

[19]     See Milbourne v. Baker, 11-CV-1866-JD, 2012 WL 1889148, at *5 (E.D. Pa.
May 23, 2012) ("With respect to plaintiff's individual-capacity claim against [defendant police
officer], the [PSTCA] states that employees of a local agency are entitled to the same immunity
as their employer."); Momot v. City of Phila., 11-CV-7806-JD, 2012 WL 1758630, at *4 (E.D.
Pa. May 16, 2012) (same); Kokinda v. Breiner, 557 F. Supp. 2d 581, 594 (M.D. Pa. 2008)
(noting that PSTCA immunity also extends to an employee of the City who is liable in his
individual capacity where the conduct does not amount to actual fraud, crime, actual malice or
willful misconduct); Morris v. Dixon, No. 03-CV-6819, 2005 WL 950615, at *13 (E.D. Pa. Apr.
20, 2005) (finding the defendant officer was entitled to immunity under the PSTCA in his
individual capacity because no evidence existed that he committed any crime or fraud, held any
malice, or engaged in willful misconduct); Devivo v. Phila. Parking Auth., No. 97-2349, 1997
WL 734002, at *3 (E.D. Pa. Nov. 6, 1997) (noting that the analysis of defendant officers'
immunity in their individual capacities is governed by §§8545 and 8550 of the PSTCA); Gines
by Gines v. Bailey, No. 92-4170, 1992 WL 394512, at *4 (E.D. Pa. Dec. 29, 1992) (holding that
the defendant municipal employee is immune under the PSTCA from the plaintiff's individual
capacity suit as to all alleged negligent acts).

supervisors from liability where their conduct constitutes a "crime, actual fraud, actual malice, or willful misconduct." 42 Pa. Cons. Stat. § 8550.  Under Pennsylvania law, "the term 'willful misconduct' is synonymous with the term 'intentional tort.'" Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006) (citations and quotations omitted).  Accordingly, the PSTCA does not bar plaintiff's claims for assault and battery or civil conspiracy against defendant officers or the police Chief or supervisors.

### B.      Assault and Battery

Because I find that plaintiff has sufficiently asserted a plausible claim of excessive force, I will not dismiss his state law assault and battery claims against defendant officers.[20]  Under Pennsylvania law, an "'assault is an intentional attempt by force to do injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person.'" Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994), citing Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. Ct. 1950).  "The appropriate standard for determining an officer's potential liability for assault and battery when making an arrest is whether excessive or unreasonable force was used in effectuating that arrest." Glass v. City of Phila., 455 F. Supp. 2d 302, 366 (E.D. Pa. 2006); see also Renk, 641 A.2d at 293 (a "claim brought under Pennsylvania law for excessive force by a police officer is a claim for assault and battery").  As I have discussed, plaintiff's pleading as to his excessive force claim is sufficient at this stage.  Accordingly, I will not dismiss plaintiff's assault and battery claims against defendant officers.

---

[20]      Plaintiff does not allege that unknown Police Chief and supervisors were personally involved in the alleged acts of assault and battery against him.

### C.    Civil Conspiracy

Plaintiff's conclusory allegations that the officer defendants engaged in civil conspiracy, however, are not sufficient to state a claim.  To state a claim for civil conspiracy, Pennsylvania law requires plaintiff to demonstrate that an overt unlawful act was "done in pursuance of the common purpose" by a combination or two or more persons and that the unlawful act caused "actual legal damage."  Montgomery Cnty., Pa. v. MERSCORP, Inc., 904 F. Supp. 2d 436, 453 (E.D. Pa. 2012), quoting Com. v. TAP Pharm. Prods., Inc., 36 A.3d 1112, 1144 (Pa. Commw. Ct. 2011).  Moreover, proof of malice is an essential part of a cause of action for civil conspiracy and requires that plaintiff allege that "the conspirators took unlawful actions with the specific intent to injure the plaintiff . . . ."  Id., citing TAP Pharm., 36 A.3d at 1185.  "The sufficiency of a claim for civil conspiracy under state law, brought in federal court, is governed by the Federal Rules of Civil Procedure."  Adams v. Teamsters Local, 115, 214 F. App'x 167, 176 (3d Cir. 2007); Simmons v. City of Phila., 947 F.2d 1042, 1085 (3d Cir. 1991).

In the instant case, plaintiff merely alleges that "[t]he defendants individual police officers . . . did act in concert with one another, in that two or more of them did unlawfully assault the plaintiff, in the manner described herein before," Dkt. No. 39 at ¶ 172, and "[the] defendants individual police officers . . . along with Detective Weaver, did further commit unlawful acts, acting in concert with one another, in that two or more of them" allegedly exceeded the scope of the search warrant by entrapping him and endangering his life.  See id. at ¶ 173.

"Conclusory allegations of 'concerted action,' without allegations of fact that reflect joint action, are insufficient to meet [Rule 8 pleading] requirement[s]."  Adams, 214 F. App'x at 176. Plaintiff's amended complaint is completely devoid of any facts to support his allegations that

the officer defendants acted in pursuance of a common purpose or in concert to cause a tort, as is required to state a claim for civil conspiracy under Pennsylvania law.[21]

Accordingly, I will dismiss his state law civil conspiracy claims against the officer defendants with leave to amend to the extent he is able to assert sufficient facts to support his claims.

## III.   Relief Requested

### A.       Punitive Damages

I will dismiss plaintiff's federal law claims for punitive damages against defendant officers, the Police Chief and supervisors in their official capacities.  See Thomas v. Bushkill Twp., No. 11-7578, 2014 WL 958799, at *7 (E.D. Pa. Mar. 12, 2014), quoting Lakits v. York, 258 F. Supp. 2d 401, 408 (E.D. Pa. 2003) ("defendants 'in their capacities as officers . . .  are immune from [p]laintiff's § 1983 punitive damages claims'").  I will also dismiss plaintiff's state law claims for punitive damages against defendant officers, the Police Chief and supervisors in their official capacities.  Because official capacity claims amount to claims against the City and County, the PSTCA applies to preclude recovery of punitive damages.  Under the PSTCA, a political subdivision is not liable for punitive damages.  See  42 Pa. Cons. Stat. § 8553(c); Lieberman v. Marino, No. 06-2745, 2007 WL 789436, at *3 (E.D. Pa. Mar. 13, 2007); Momot,

---

[21]       Plaintiff appears to additionally assert his conspiracy claims pursuant to federal law in his brief in his response to defendants' motions to dismiss.  See Dkt. No 58 at ECF p. 35. In order to demonstrate the existence of a conspiracy under § 1983, plaintiff must similarly "show that two or more conspirators reached an agreement to deprive him [ ] of a constitutional right under color of law."  Laurensau v. Romarowics, 528 F. App'x 136, 140 (3d Cir. 2013), quoting Parkway Garage, Inc. v. City of Phila., 5 F.3d 685, 700 (3d Cir. 1993), abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392 (3d Cir. 2003).  Plaintiff has not alleged the existence of an agreement between or amongst defendant officers and his federal conspiracy fails for the same reason as his state civil conspiracy claim.

2012 WL 1758630, at *6.  Accordingly, it would be futile to allow plaintiff to amend his punitive damages claim against defendants in their official capacity and I will dismiss this claim with prejudice.

However, I will not dismiss plaintiff's claim for punitive damages against the officer defendants in their individual capacity.  Punitive damages against the officer defendants in their individual capacities are available under § 1983 only to the extent that plaintiff can allege that the officer defendants acted with a "reckless or callous disregard of, or indifference to, the rights or safety of others."  Rivera v. James, No. 03-4631, 2004 WL 1784351, at *1 (E.D. Pa. 2004), citing Savarese v. Agriss, 883 F.2d 1194, 1204 (3d Cir. 1989).  Punitive damages are "reserved for special circumstances," that is, for "cases in which the defendant's conduct amounts to something more than a bare violation justifying damages or injunctive relief."  Brennan v. Norton, 350 F.3d 399, 428-29 (3d Cir. 2003); Savarese, 883 F.2d at 1205.  In order to find punitive damages "the defendant's conduct must be, at a minimum, reckless or callous.  Punitive damages might also be allowed if the conduct is intentional or motivated by evil motive, but the defendant's action need not necessarily meet this higher standard."  Springer v. Henry, 435 F.3d 268, 281 (3d Cir. 2006), quoting Savarese, 883 F.2d at 1204.

Similarly, punitive damages can only be awarded under Pennsylvania law "'for conduct that is outrageous because of the defendant's evil motive or his reckless indifference to the rights of others.'"  Madison v. Bethanna, Inc., No. 12-01330, 2012 WL 1867459, at *13 (E.D. Pa. May 23, 2012), quoting Rizzo v. Haines, 555 A.2d 58, 69 (Pa. 1989).  Specifically, "'[a] court may award punitive damages only if the conduct was malicious, wanton, reckless, willful, or oppressive.'"  Id., quoting Rizzo, 555 A.2d at 69.  Willful misconduct has been defined by the Pennsylvania Supreme Court as "conduct whereby the actor desired to bring about the result that

followed or at least was aware that it was substantially certain to follow, so that such desire can be implied."  Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006), quoting Renk, 641 A.2d at 293. The Court of Appeals has made clear that willful misconduct is more than recklessness, deliberate indifference and the knowing disregard of risks, but instead requires "specific intent." Bright v. Westmoreland Cnty., 443 F.3d 276, 287 (3d Cir. 2006).  Proof of conduct which exceeds the PSTCA immunity protection requires a "demanding level of fault."  Sanford, 456 F.3d at 316.

Viewing the facts in the light most favorable to plaintiff as I must, plaintiff's allegations that officer defendants repeatedly punched him in the face, continued to punch and kick him and mocked his cries of pain while he was in an unresisting and defensive position, Dkt. No 39 at ¶¶ 116-19; 123, 125-27, are sufficient at this stage of the proceedings to make out a plausible claim of "reckless or callous disregard of, or indifference to" the rights of others.  Accordingly, I will not dismiss plaintiff's claim for punitive damages against the officer defendants in their individual capacity.

### B.     Injunctive and Declaratory Relief

Plaintiff seeks a declaration that defendants' actions violated his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments and under state law.  See Dkt. No. 39 at ECF pp. 33-34.  He also seeks an injunction requiring the City, Lehigh County, the Police Chief and police supervisors, to: (1) "invalidate the striking, punching and kicking of arrestee's face and head before other measures are tried first and proved ineffective"; (2) and "require that all preplanned arrests be recorded with video and audio."  Id. at ECF pp. 33-34.  I will dismiss his requests for declaratory and injunctive relief.

"A declaratory judgment or injunction can issue only when the constitutional standing

requirements of a 'case' or 'controversy' are met." St. Thomas–St. John Hotel & Tourism
Ass'n, Inc. v. Gov. of V.I., 218 F.3d 232, 241 (3d Cir. 2000). The "case-or-controversy
requirement is satisfied only where a plaintiff has standing." Sprint Commc'ns Co., L.P. v.
APCC Servs., Inc., 554 U.S. 269, 273 (2008); see also Toll Bros., Inc. v. Twp. of Readington,
555 F.3d 131, 143 (3d Cir. 2009). Plaintiff has not sufficiently alleged that he has standing
because he has not sufficiently alleged a "likelihood that he will again be wronged in a similar
way." City of L.A. v. Lyons, 461 U.S. 95, 111 (1983). Declaratory relief is not proper solely to
adjudicate past conduct, nor to simply proclaim that one party is liable to another. Hodinka v.
Dela. Cnty., No. 08-5663, 2011 WL 49570, at *5 (E.D. Pa. Jan. 7, 2011), citing Corliss v.
O'Brien, 200 F. App'x 80, 84 (3d Cir. 2006).

      Similarly, "[e]ven if the plaintiff has suffered a previous injury due to the defendant's
conduct, the equitable remedy of an injunction is 'unavailable absent a showing of irreparable
injury, a requirement that cannot be met where there is no showing of any real or immediate
threat that the plaintiff will be wronged again[.]'" ZF Meritor, LLC v. Eaton Corp., 696 F.3d
254, 301 (3d Cir. 2012) (citation omitted). There are no allegations in plaintiff's amended
complaint that would suggest that he will subjected in the future to similar conduct as that which
he alleges defendants subjected him to on June 3, 2011. Accordingly, I will dismiss plaintiff's
requests for injunctive and declaratory relief with leave to amend to the extent that he is able to
sufficiently allege a basis for awarding the relief requested.

      An appropriate Order follows.