IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| JOSE LUIS TORRES | : | CIVIL ACTION |
| --- | --- | --- |
| | : | NO. 13-3066 |
| v. | : | |
| | : | |
| ALLENTOWN POLICE | : | |
| DEPARTMENT, et al. | : | |

O'NEILL, J.                                                                                    September 27, 2016

## **MEMORANDUM**

Presently before me are a motion for summary judgment by defendant Detective Todd Frey, Dkt. No. 105, a motion for partial summary judgment by defendants Sergeant Michael Faulkner, Detective Jason Krasley and Agent Mark Boyer, Dkt No. 104, plaintiff Jose Torres' response, Dkt. No. 106, and defendants' replies, Dkt. Nos. 108 and 110.

On June 3, 2011, police officers arrested plaintiff in an alley in Allentown, Pennsylvania. Based on this event, plaintiff brings claims against various officers under § 1983 for excessive force (Count I) and failure to intervene (Count II) and under state law for assault or battery (Count III). The defendants remaining in this action are Sergeant Matthew Karnish, Detective Kyle Hough, Detective Stephen Milkovitz, Detective Jason Krasley, Sergeant Michael Faulkner and Detective Todd Frey, as well as Agent Mark Boyer and Sergeant Robert Kulp against whom only Count II, failure to intervene, remains. Dkt. No. 83 (Third Amended Complaint); Dkt. No. 103 (Stipulation and Order Dismissing Claims). Detectives Frey and Krasley now seek summary judgment with respect to plaintiff's claims on all three counts. Dkt. Nos. 104, 105. Sergeant Faulkner seeks summary judgment with respect to plaintiff's claims for excessive force and assault and battery (Counts I and III). Dkt. No. 104. Agent Boyer seeks summary judgment with respect to plaintiff's claim for failure to intervene (Count II). Dkt. No. 104. For the reasons

given below, I will deny Detective Frey's motion for summary judgment. With respect to the partial motion for summary judgment of Sergeant Faulkner, Detective Krasley and Agent Boyer, I will grant the motion with respect to the claims against Sergeant Faulkner (Counts I and III) and Detective Krasley (Counts I, II and III) and deny the motion with respect to the claims against Agent Boyer (Count II).

As a result of this order, the remaining claims in this action are plaintiff's claims for excessive force, failure to intervene and assault or battery (Counts I, II and III) against Detective Frey, Sergeant Karnish, Detective Hough and Detective Milkovitz and plaintiff's claims for failure to intervene (Count II) against Agent Boyer, Sergeant Kulp and Sergeant Faulkner.

## BACKGROUND

Following are the facts viewed in the light most favorable to plaintiff.

In the spring of 2011, the Allentown Police Department was investigating Jose Torres for a string of burglaries. Dkt. No. 106-5 (Mriss Dep.) at 18:16-22; Dkt. No. 106-10 (Boyer Dep.) at 31:16-32:10. As part of this investigation, officers made arrangements on June 3, 2011 for a confidential informant to call plaintiff and ask him to sell her a gun. Dkt. No. 106-16 (Weaver Dep.) at 22:5-13. Over the phone, plaintiff agreed to make the sale. Dkt. No. 106-1 at ECF 3. He then drove to a garage at 838 Hickory Street in Allentown in a Tahoe SUV with Amber Breeland in the passenger seat. Dkt. No. 106-5 (Mriss Dep.) at 34:11-35:15; Dkt. No. 106-4 (Sannie Dep.) at 19:11-20:04; Dkt. No. 106-3 (Torres Dep.) at 53:12-54:17. Plaintiff retrieved the gun, wrapped in a heavy white plastic shopping bag, from the garage and handed it to Ms. Breeland, who put it on the floor of the SUV in front of her seat. Id.; Dkt. No. 106-1 at ECF 4 ¶ 8; Dkt. No. 106-3 (Torres Dep.) at 54:14-20.

Officers had set up surveillance on the garage, which plaintiff accessed from South Lumber Street. Dkt. No. 106-4 (Sannie Dep.) at 23:1-29:14, Dkt. No. 106-1 at ECF 2 ¶ 8. After picking up the gun, plaintiff drove south on Lumber Street and turned right onto Hickory Street, an alley that runs southwest from Lumber Street to Ninth Street. Id. At this point one of the officers radioed nearby police units and the officers decided to move in and arrest plaintiff. Dkt. No. 106-9 (Faulkner Dep.) at 25:23-26:2; Dkt. No. 106-15 (Lake Dep.) at 31:6-32:5; Dkt. No. 106-5 (Mriss Dep.) at 43:22-45:21.

Detectives Chad Moyer and Todd Frey stopped on Ninth Street at the west end of the alley. Dkt. No. 106-6 (Moyer Dep.) at 34:5-35:15. They each got out of the car with their guns drawn and approached plaintiff's SUV as it came down the alley towards them. Id. at 35:12-37:13. Detective Moyer approached from plaintiff's right with Detective Frey "off to [Moyer's] right," or plaintiff's left. Id. at 69:20-23. Both officers were wearing civilian clothes. Id. at 36:5-7, 37:7-9; Dkt No. 106-11 (Frey Dep.) at 25:5-16. Near them, Detective Faulkner also parked his car in a lot off Ninth Street. Dkt. No. 106-9 (Faulkner Dep.) at 30:1-3.

Plaintiff observed a man running toward him on the left side of the alley and pointing a gun at him. Dkt. No. 106-3 (Torres Dep.) at 61:22-24, 151:2-9. The man running toward him was not wearing a bulletproof vest, a badge or a chain and yelled repeatedly, "Get out of the car." Id. at 62:1-6. The man did not identify himself as a police officer. Id. at 82:23-83:1. Plaintiff "didn't know what he wanted or what was going on." Id. at 64:20-21. He believed he was confronted by "a crazy guy . . . pointing a gun at me." Id. at 63:7.

Plaintiff put his SUV in reverse and floored the gas pedal. Dkt. No. 106-1 at ECF 4, ¶ 19. He immediately ran into an unmarked police minivan driven by Detective Hough. Id. at ¶ 20. Plaintiff was "looking at [the man with the gun] the whole time." Dkt. No. 106-3 (Torres

3

Dep.) at 63:10-64:13. At this point, several police cars had lined up in the alley behind plaintiff: Detective Hough's, followed by Detective Milkovitz's, then Detective Karnish's in which Detective Krasley was a passenger. Dkt. No. 106-1 at ECF 3 ¶¶ 14-17, 10 ¶ 68. After the collision, plaintiff opened the door to his SUV to step outside when he was grabbed from behind and pressed against the inside of the open driver side door. Dkt. No. 106-3 (Torres Dep.) at 65:10-67:3.

A group of officers punched and grabbed plaintiff, including the gunman who ran towards him and punched him in the face multiple times through the open window frame of the driver side door. Id. at 67:4-70:24, 73:16-74:10. The officers then pulled him to the ground and kicked him in the head and face. Id. at 74:14-75:14, 78:9-81:19. They mimicked his cries of pain. Id. at 86:9-15. Plaintiff screamed at them to stop and yelled for help, but the officers laughed at him and said, "He's not tough anymore." Dkt. No. 106-18 (Breeland Dep.) at 33:16-22. One officer said, "Take this, you piece of shit. This is for fucking with the cops." Id. at 28:5-7; Dkt. No. 106-3 (Torres Dep.) at 81:21-22. When the officers stopped beating and mocking plaintiff, they handcuffed him and picked him up to a standing position. Dkt. No. 106-3 (Torres Dep.) at 87:20-89:23. At no time before or during his arrest did plaintiff resist, try to get away from or try to strike any of the officers. Id. at 100:11-101:7, 175:7-9. Plaintiff's face was bruised and he had a cut on the left side of his head for which he received stitches. Id. at 109:24-110:2, 172:14-22; Dkt. No. 106-19 (Gen. Instructions from Sacred Heart Hosp., June 3, 2011).

Plaintiff estimates officers assaulted him for approximately five minutes. Id. at 99:18-25. But the officers estimate a much shorter time. See, e.g., Dkt. No. 106-8 (Milkovitz Dep.) at

36:3-37:10 (asserting he is "fairly confident" that the entire arrest took "[n]o more than thirty seconds"); Dkt. No. 106-9 (Faulkner Dep.) at 78:21-22 (also estimating thirty seconds).

Testimony indicating the size of the group of officers that assaulted plaintiff is varied and approximate. It is undisputed that three officers—Detectives Hough and Milkovitz and Sergeant Karnish—approached the driver side of plaintiff's SUV and physically removed plaintiff from the truck. Dkt. No 106-1 at ECF 6 ¶ 38. Plaintiff contends that three other officers were also involved based on Detective Moyer's testimony that approximately six officers were around plaintiff on the driver side of the truck. Dkt. No. 106-1 at ECF 26 ¶ 25; Dkt. No. 106-6 (Moyer Dep.) at 46:9-47:17. However, Detective Moyer states explicitly that this number is an approximation. Id. He also did not recall whether all of the officers on the driver side were involved in the struggle with plaintiff. Id. at 49:5-15. Other witnesses estimate between two and five officers were present.[1]

While the group of officers was assaulting plaintiff, other officers were arresting Ms. Breeland on the passenger side of the SUV. Ms. Breeland's arrest took place approximately fifteen to twenty feet from where plaintiff was handcuffed. Dkt. No. 106-3 (Torres Dep.) at 93:4-9. It is undisputed that these officers include Detective Moyer, Sergeant Lake, and Agent (then Detective) Boyer. Dkt. No. 106-6 (Moyer Dep.) at 42:13-17, 67:2-6; Dkt. No. 106-12 (Kulp Dep.) at 27:14-23, 36:19-23; Dkt. No. 106-15 (Lake Dep.) at 34:4-37:15. Sergeant Kulp may also have assisted on the passenger side. Id. Both Detectives Frey and Krasley claim to

---

[1] Ms. Breeland testified that two officers approached plaintiff's side of the truck initially and two more moments later. Dkt. No. 106-18 (Breeland Dep.) at 15:11-13, 19:11-22. Defendant Faulkner describes "three or four" officers physically touching plaintiff when he was taken to the ground. Dkt. No. 106-9 (Faulkner Dep.) at 49:16-19. Defendant Frey describes "two or three or four" officers. Dkt. No. 106-11 (Frey Dep.) at 27:14-22. Agent Boyer testifies that it could have been five or more. Dkt. No. 106-10 (Boyer Dep.) at 62:15-63:2. Plaintiff testified that there were "more than two" actually assaulting him. Dkt. No. 106-3 (Torres Dep.) at 71:21-23.

5

have been on the passenger side as well. Dkt. No. 106-11 (Frey Dep.) at 27:4-29:20; Dkt. No. 106-20 (Krasley Dep.) at 18-21. In total, between nine and fifteen officers were in the alley by the time plaintiff was handcuffed. Dkt. No. 106-11 (Frey Dep.) at 49:5-10 ("approximately 10 to 15"); Dkt. No. 106-3 (Torres Dep.) at 98:14-24 ("about nine officers"); Dkt. No. 106-6 (Moyer Dep.) at 32:3-11 ("about maybe 15").

Additional facts describing each moving defendant's involvement in plaintiff's arrest follow.

## DISCUSSION

### I. Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." It is not the role of the judge at the summary judgment stage to weigh the evidence or to evaluate its credibility but to determine "whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). A dispute as to a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 255. A fact is "material" if it might affect the outcome of the case under governing law. Id. I must consider all evidence in the light most favorable to the non-moving party and where the non-moving party's evidence contradicts the movant's, I must accept the non-movant's version as true. Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 512 (3d Cir. 1994).

To survive summary judgment on his claims, plaintiff must present sufficient evidence against the particular defendant in question. Howell v. Cataldi, 464 F.2d 272, 282-3 (3d Cir. 1972). This evidence is insufficient if it merely implicates unidentified members of a group of

which defendant was a member. Id.; McNeil v. City of Easton, 694 F. Supp. 2d 375, 395-99 (E.D. Pa 2010). While the plaintiff can point to circumstantial evidence, the evidence as a whole must be more than a mere "scintilla" in support of the plaintiff's position. Anderson, 477 U.S. at 252; Estate of Smith v. Marasco, 318 F.3d 497, 514 (3d Cir. 2003).

## II. Governing Substantive Law

Defendants move for summary judgment with respect to certain of plaintiff's claims for 1) excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983, 2) failure to intervene in violation of the Fourth Amendment under § 1983 and 3) assault or battery under Pennsylvania law.

Defendants Detective Frey, Detective Krasley and Sergeant Faulkner move for summary judgment with respect to plaintiff's excessive force claims. Plaintiff claims that defendants violated his Fourth Amendment right not to be subject to the use of excessive force under § 1983. Graham v. Connor, 490 U.S. 386, 394 (1989). Officers making an arrest may use force that is "objectively reasonable in light of the facts and circumstances confronting them." Id. at 397. Whether an officer used excessive force is determined by the totality of the circumstances including: "(1) the severity of the crime at issue, (2) whether the suspect poses an imminent threat to the safety of the police or others in the vicinity and (3) whether the suspect attempts to resist arrest or flee the scene." Santini v. Fuentes, 795 F.3d 410, 417 (3d Cir. 2015), citing Graham, 490 U.S. at 396. Additional relevant factors include "the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir.1997).

7

Defendants Detective Frey, Detective Krasley and Agent Boyer move for summary judgment with respect to plaintiff's claims that they failed to intervene in violation of his rights under the Fourth Amendment. Where officers used excessive force in violation of plaintiff's constitutional rights, a bystanding officer is liable under § 1983 for failing to intervene if he had: 1) reason to know that officers were using excessive force and 2) a realistic opportunity to intervene and prevent the harm from occurring. Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002); Bryant v. City of Phila., 890 F. Supp. 2d 591, 601 (E.D. Pa. 2012). "In each case, the question whether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations." Figueroa v. Mazza, 825 F.3d 89, 107 (2d Cir. 2016); see also Armbruster v. Marguccio, No. 05-344J, 2006 WL 3488969, at *8 (W.D. Pa. Dec. 4, 2006) (considering the length of the alleged assault, the officer's proximity to it, and the officer's ability to see or hear it).

Finally, defendants Detective Frey, Detective Krasley and Sergeant Faulkner move for summary judgment with respect to plaintiff's state law claims for assault and battery. To succeed on his Pennsylvania state law claims in tort for assault or battery plaintiff must present sufficient evidence for a jury to find that defendants intended to cause harmful or offensive contact with plaintiff or fear of such contact. Renk v. City of Pittsburgh, 641 A.2d 289, 295 (Pa. 1994). Assault is either the intended effort to cause bodily harm that falls short—that is, attempted battery—or an act that is intended to and reasonably does cause the victim to fear immediate bodily harm—that is, common law "menacing." United States v. Jones, 740 F.3d 127, 139 (3d Cir. 2014) (describing the common law definition of assault); Renk, 641 A.2d at 294-95 (defining assault and battery under Pennsylvania law), citing Restatement (Second) of

8

Torts § 21(1) (1965). Battery is an assault where the offensive contact results. <u>Renk</u>, 641 A.2d at 294-95. A police officer's use of force in making a lawful arrest constitutes an assault or battery when the amount of force used is unreasonable. <u>Id.</u> at 293. The analysis is therefore similar to that for excessive force under § 1983. <u>See</u> <u>Graham</u>, 490 U.S. at 397.

I assess the motions with respect to each officer in turn.

### III. Todd Frey

Detective Todd Frey moves for summary judgment on three claims: 1) excessive force, 2) failure to intervene and 3) assault or battery. Because I find that material questions of fact remain with respect to these claims, I will deny Detective Frey's motion.

#### A. Additional Facts

According to officers' reports, Detective Frey approached the front of plaintiff's SUV from the Ninth Street side of the alley in front of plaintiff and to the left. Dkt. No. 106-6 (Moyer Dep.) at 69:20-23; Dkt. No. 106-8 (Milkovitz Dep.) at 26:16-23; Dkt. No. 106-11 (Frey Dep.) at 22:7-13; Dkt. No. 106-12 (Kulp Dep.) at 26:12-15. He was in civilian clothes and his gun was drawn. Dkt. No. 106-6 (Moyer Dep.) at 37:12-13; Dkt. No. 106-12 (Kulp Dep.) at 26:21-22. This account matches plaintiff's description of a man running from Ninth Street down the alley on his left pointing a gun at him. Dkt. No. 106-3 (Torres Dep.) at 59:1-5, 61:17-25, 62:1.

Plaintiff describes this gunman running toward him and, after plaintiff's collision with the van behind him, hitting plaintiff in the face through the open window of the SUV's open door. Dkt. No. 106-3 (Torres Dep.) at 66:12-17, 67:5-8, 72:3-4, 17-18. In his report Sergeant Kulp also describes an "unknown officer" who "administered a single stun to Torres' head area." Dkt. No. 106-17 (OPS Admin. Investigation Report, June 3, 2011). This officer hit plaintiff even though plaintiff was not resisting arrest. Dkt. No. 106-3 (Torres Dep.) at 100:11-101:7, 175:7-9.

9

Detective Frey says that, after plaintiff's collision with Detective Hough's van, he went toward the passenger side of the SUV where he stood behind the officers arresting Ms. Breeland. Dkt. No. 106-11 (Frey Dep.) at 22:19-23:2, 28:17-29:20. From there he could hear officers yelling at plaintiff but was focused on the passenger. Id. at 31:1-8. He could "see over there" and "could see heads and stuff … through the window" but did not know where plaintiff was. Id. at 33:1-18. Other officers place Defendant Frey on the passenger side or away from the driver side during plaintiff's arrest.[2] Many officers, including those assisting in plaintiff's arrest, did not know where Detective Frey was during the arrest. Dkt. No. 106-12 (Kulp Dep.) at 19:5-6, 22-24; Dkt. No. 106-20 (Krasley Dep.) at 32:15-20; Dkt. No. 106-15 (Lake Dep.) at 46:3-9; Dkt. No. 106-7 (Hough Dep.) at 87:1-4; 106-10. (Boyer Dep.) at 71:15-21; Dkt. No. 106-5 (Mriss Dep.) at 61:14-16; Dkt. No. 106-16 (Weaver Dep.) at 34:11-13.

B.     Discussion

Plaintiff has presented sufficient evidence for a reasonable jury to conclude that Detective Frey used unreasonable force against him and failed to intervene as other officers used such force. I must draw all inferences in favor of the non-moving party and where the non-moving party's evidence contradicts the movant's, I must accept the non-movant's version as true. Pastore, 24 F.3d at 512. Accepting plaintiff's testimony about the incident as true, there is sufficient evidence to raise a genuine issue of material fact as to whether Detective Frey hit plaintiff through the open window of the SUV.

---

[2] Detective Milkovitz puts Frey in front of the vehicle "over to the passenger's side." Dkt. No. 106-8 (Milkovitz Dep.) at 44:10-12, 58:13-17. Detective Fey, who arrived at the scene after plaintiff had been taken into custody, said he observed Detective Frey standing near the passenger side of the truck. Dkt. No. 105-17 (Fey Dep.) at 49:3-9; 49:24-50:1-6. Detective Sannie believed Detective Frey was standing in the street not near plaintiff's truck. Dkt. No. 106-4 (Sannie Dep.) at 50:19-24. Detective Faulkner did not think anyone approached the driver side of the truck from Ninth Street, which was the direction that Detective Frey approached from. Dkt. No. 106-9 (Faulkner Dep.) at 40:10-14.

Because the man running towards plaintiff matches the description of Detective Frey's position a jury could reasonably conclude that the gunman plaintiff describes was Detective Frey. Although other officers place Detective Frey elsewhere during the assault and although no officers corroborate plaintiff's testimony that Detective Frey was on the driver side of the SUV, I must view the evidence in the light most favorable to plaintiff. In accordance with plaintiff's eyewitness testimony, a reasonable jury could find that Detective Frey used unreasonable and excessive force against plaintiff and thus find him liable under § 1983 and for assault or battery under state law.

Although defendant contends he is immune from liability for state law claims of assault or battery, officers acting within the scope of their employment are not immune from liability under state law if the conduct involves a crime, malice or willful misconduct. 42 Pa. Cons. Stat. §§ 8541, 8550 (2016); Pettit v. Namie, 931 A.2d 790, 801 (Pa. 2007). "The term willful misconduct is synonymous with the term 'intentional tort.'" Sanford v. Stiles, 456 F.3d 298, 315 (3d Cir. 2006). Therefore, if a jury could conclude that an officer is liable for assault or battery the officer is not entitled to summary judgment based on immunity under 42 Pa. Cons. Stat. § 8541.

On plaintiff's § 1983 claim for failure to intervene, there is evidence that Detective Frey was aware of officers' assault on plaintiff and had an opportunity to prevent it. Smith, 293 F.3d at 650-51. An officer is more likely to have had a reasonable opportunity to intervene if the assault was prolonged, the officer was physically close to the plaintiff being assaulted or the officer could perceive the assault by seeing or hearing it. Armbruster, No. 05-344J, 2006 WL 3488969, at *8 (W.D. Pa. Dec. 4, 2006).

According to plaintiff's testimony, Detective Frey was present as other officers beat plaintiff despite his compliance with their orders. Dkt. No. 106-3 (Torres Dep.) at 66:12-17, 67:5-8, 72:3-4, 17-18. If Detective Frey was immediately present a jury could find him liable for failure to intervene. Additionally, Detective Frey's own testimony provides evidence to support plaintiff's claim for failure to intervene. Detective Frey describes standing back as other officers arrested Ms. Breeland. Dkt. No. 106-11 (Frey Dep.) at 22:19-23:2, 28:17-29:20. From this position he could hear officers yelling at plaintiff. Id. at 31:1-8. Ms. Breeland's arrest took place approximately 15 to 20 feet from where plaintiff was handcuffed. Dkt. No. 106-3 (Torres Dep.) at 93:4-9. Officers assaulted plaintiff for somewhere between thirty seconds and approximately five minutes. Id. at 99:18-25. Given officers' shouts during the assault and Detective Frey's proximity to the assault, a reasonable jury could find Detective Frey liable for failure to intervene.

Therefore I will deny Detective Frey's motion for summary judgment.

## IV. Michael Faulkner

Because I find plaintiff has not set forth sufficient evidence for a reasonable jury to find that Sergeant Michael Faulkner used unreasonable force against plaintiff, I will grant Sergeant Faulkner's motion for summary judgment with respect to plaintiff's § 1983 claim of excessive force and state law claim of assault or battery. Sergeant Faulkner does not move for summary judgment on plaintiff's claim against him for failure to intervene.

### A. Additional Facts

After officers radioed the surrounding police units to move in and arrest plaintiff, Sergeant Faulkner parked in a lot off Ninth Street about 15 to 20 yards from plaintiff's SUV. Dkt. No. 106-9 (Faulkner Dep.) at 30:1-3, 32:1-10. He got out of the car and watched Detectives

12

Moyer and Frey approach the SUV. Id. at 30:14-30:15; 32:1-15. When other officers removed plaintiff from the truck, Sergeant Faulkner "took a few steps toward the car" but was generally "kind of just assessing the entire situation." Id. at 44:10-13. During the arrest, before plaintiff was handcuffed, Sergeant Faulkner walked up to plaintiff. Id. at 50:13-51:3. Sergeant Faulkner saw officers "struggling with [plaintiff] on the ground." Id. at 56:14-15; see also Dkt. No. 106-10 (Boyer Dep.) at 76:19-77:16 (testifying that Sergeant Faulkner was on the driver side of the truck when Agent Boyer approached); Dkt. No. 106-12 (Kulp Dep.) at 28:2-9 (testifying that Sergeant Faulkner was "on the scene at some point" and may have been "on scene initially").

B.     **Discussion**

In order to survive summary judgment, plaintiff must present evidence supporting his claims that Sergeant Faulkner used unreasonable force against him, violating his constitutional rights under § 1983 and committing an assault or battery. It is insufficient for plaintiff to identify a group of officers present without evidence that any particular officer assaulted plaintiff. Howell, 464 F.2d at 282-3; McNeil, 694 F. Supp. 2d at 395-99 ("Even if [the plaintiff's] evidence were sufficient to create a dispute concerning a material fact as to *whether* an officer kicked plaintiff in the head, defendants are still entitled to summary judgment because [the] plaintiff has not provided any evidence as to *which* officer kicked him in the head."); see also Anderson, 477 U.S. at 257 (requiring the plaintiff to present "affirmative evidence"). In Howell, a witness testified that two officers restrained the plaintiff and one of them beat his shins with a wooden club. 464 F.2d at 282. The testimony "was insufficient to identify [particular officers] as participants" because there was no proof that one of them wielded the club rather than the other. Id. at 282-83. The Court of Appeals in Howell affirmed the district court's decision not to send the case to the jury because of plaintiff's failure to make an appropriate identification. Id.

13

at 284. Evidence showing an officer's presence at the scene where officers assaulted the plaintiff was insufficient to support a finding that the particular officer assaulted the plaintiff. Id.

Plaintiff has not set forth sufficient evidence that Sergeant Faulkner used force against him. Plaintiff argues that testimony placing six officers on the driver side during plaintiff's arrest and testimony that Sergeant Faulkner was present toward the end of the arrest support an inference that Sergeant Faulkner used excessive force against plaintiff. Dkt. No. 106 at ECF 12. As in Howell, plaintiff has proffered sufficient evidence for a reasonable jury to conclude that defendant was among the officers present, some of whom were assaulting plaintiff. Id.; Dkt. No. 106-6 (Moyer Dep.) at 47:14-49:15. But under Howell, this evidence is insufficient to sustain a verdict in plaintiff's favor. 464 F.2d at 282-83. Plaintiff has not presented any evidence that Sergeant Faulkner himself used force against plaintiff. Therefore I will grant summary judgment in favor of Sergeant Faulkner with respect to Counts I and III of plaintiff's Third Amended Complaint.

## V.     Jason Krasley

I will grant summary judgment in favor of Detective Jason Krasley on plaintiff's claims for: 1) excessive force, 2) assault or battery and 3) failure to intervene. Plaintiff has not presented sufficient evidence for a reasonable jury to conclude either that Detective Krasley used unreasonable force against plaintiff or that he had an opportunity to intervene in other officers' use of force against plaintiff.

### A.     Additional Facts

When officers radioed for surrounding units to move in and arrest plaintiff, Detective Krasley was a passenger in a minivan driven by Detective Karnish. They arrived in the alley behind two cars—one driven by Detective Hough and the next by Detective Milkovits. Dkt. No.

14

106-11 (Krasley Dep.) at 18:6-14. Detective Krasley testified that he approached the passenger side of plaintiff's SUV and assisted in the arrest of the passenger, Ms. Breeland. Id. at 18:14-20:16. He testified he could "hear commands being given by detectives" to plaintiff on the driver side but he "wasn't over there" and "couldn't see what was going on." Id. at 25:9-17, 27:3-18, 46:14-17. Instead, he focused on the passenger throughout plaintiff's arrest. Id. at 27:17-28:22. He testified that once the passenger was out of plaintiff's SUV, "we believed what was in the bag were the guns, so I kept an eye on that." Id. at 27:18-20. Agent Boyer, Sergeant Kulp, Assistant Chief Lake, Detective Hough, Detective Milkovitz and Sergeant Karnish each testified that they did not remember seeing Detective Krasley during the arrest of either plaintiff or his passenger, Ms. Breeland. Dkt. No. 106-10 (Boyer Dep.) at 77:1-6; Dkt. No. 106-12 (Kulp Dep.) at 58:2-8; Dkt. No. 106-15 (Lake Dep.) at 48:12-14; Dkt. No. 106-7 (Hough Dep.) at 90:2-4; Dkt. No. 106-8 (Milkovits Dep.) at 47:18-23; Dkt. No. 106-13 (Karnish Dep.) at 48:7-10.

### B. Discussion

The burden is on plaintiff to present evidence from which a reasonable jury might return a verdict in his favor. Anderson, 477 U.S. at 257. "[D]iscredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion . . . . Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 256–57 (1986), quoting Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 512 (1984) (alteration and internal quotation marks omitted).

Plaintiff argues that the following evidence supports his claim of excessive force: 1) other officers do not corroborate Detective Krasley's testimony that he assisted in arresting the passenger and 2) Detective Moyer estimated there to have been six officers on the driver side of plaintiff's SUV during plaintiff's forcible arrest. Dkt. No. 106-1 at ECF 12. Even if a

15

reasonable jury could conclude that the lack of corroboration discredits Detective Krasley's testimony that he was on the passenger side, without more this is not a sufficient basis for drawing the contrary conclusion that Detective Krasley was on the driver side during the assault and used force against plaintiff. Anderson, 477 U.S. at 256-57. Plaintiff's contention that Detective Krasley was one of the six officers that Detective Moyer estimated were present is unsupported because no testimony places Detective Krasley on the driver side. Detective Moyer's testimony is especially weak evidence against Detective Krasley given that there were between nine and fifteen other officers in the alley at the time. Dkt. No. 106-11 (Frey Dep.) at 49:5-10. Additionally, Detective Moyer is explicit that his testimony is an approximation. Dkt. No. 106-6 (Moyer Dep.) at 46:9-47:17. Moreover, even if the evidence were sufficient to conclude that Detective Krasley was on the driver side, this would not be sufficient to support a finding that Detective Krasley used force against plaintiff. See Howell, 464 F.2d at 282-83 (discussed above). A reasonable jury could not find in plaintiff's favor on his claims for excessive force and assault or battery based on the evidence plaintiff provides.

Plaintiff also presents insufficient evidence for a reasonable jury to conclude that Detective Krasley failed to intervene in any other officers' violation of plaintiff's constitutional rights. Where officers used excessive force in violation of plaintiff's constitutional rights, a bystanding officer is liable under § 1983 for failing to intervene if he had: 1) reason to know that officers were using excessive force and 2) a realistic opportunity to intervene and prevent the harm. Smith, 293 F.3d at 650-51. "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." Figueroa, 825 F.3d at 106.

Plaintiff argues that a reasonable jury could conclude that, if Detective Krasley heard officers insulting and mocking plaintiff from the other side of the SUV, this gave him reason to

16

know that officers were using excessive force against plaintiff. Dkt. No. 106 at ECF 14. But even assuming this, plaintiff has not presented evidence that Detective Krasley had a realistic opportunity to intervene in the assault. The only evidence regarding Detective Krasley's location and occupation during the alleged assault is testimony describing him approaching the SUV from the passenger side and immediately going to assist in the arrest of Ms. Breeland, who was sitting in the passenger seat with a gun at her feet. Dkt. No. 106-20 (Krasley Dep.) at 27:15-28:5. There is no evidence that he stopped to view or assess the situation on the driver side of the SUV. Rather, he remained focused on the passenger and the gun until after other officers had handcuffed plaintiff. Id. at 27:17-28:22. Therefore, at the time that he might have perceived the alleged assault by hearing officers' shouts from the other side of the SUV, he was addressing a need to ensure the area was safe by handcuffing the passenger and monitoring the gun. There is not enough evidence for a reasonable jury to conclude that Detective Krasley had a realistic opportunity to intervene to prevent officers' assault on plaintiff such that he became a "tacit collaborator" in the assault. Figueroa, 825 F.3d at 106.

Plaintiff has not presented the affirmative evidence necessary to survive defendant's motion for summary judgment with respect to his claims against Detective Krasley. Therefore I will grant summary judgment in favor of defendant Detective Krasley on all of plaintiff's claims.

## VI. Mark Boyer

I will deny Agent Mark Boyer's motion for summary judgment on plaintiff's claim of failure to intervene because there is evidence that he observed the officers' assault on plaintiff and chose instead to assist in the passenger's arrest.

### A. Additional Facts

17

When Agent (then Detective) Boyer arrived at the scene, many other police cars were already there and the officers were out of their vehicles. Dkt. No. 106-10 (Boyer Dep.) at 55:13-56:3. Agent Boyer parked behind the other cars and approached plaintiff's SUV. Id. He saw a group of officers standing around the driver side where he assumed plaintiff to be but he did not actually see plaintiff. Dkt. No. 106-10 (Boyer Dep.) at 78:1-19, 81:10-16. He also saw Detective Moyer and Sergeant Kulp approaching the passenger side of the SUV. Id. at 60:5-14. Upon observing the scene and seeing the "demeanor" of the officers on the driver side, which suggested to him that "it wasn't necessary for me to go there," he chose to go to the passenger side where Ms. Breeland was still in the vehicle and the gun was on the SUV floor. Id. at 63:7-21, 78:20-80:14, 78:11-19. There, he arrested Ms. Breeland. Dkt. No. 106-1 at ECF 28 ¶ 42; Dkt. No. 109 at ECF 4 ¶ 42. The first time Agent Boyer saw plaintiff he was out of the SUV. Dkt. No. 106-10 (Boyer Dep.) at 81:17-82:3. This was after Ms. Breeland had been taken out of the SUV and handcuffed. Id. Agent Boyer did not remember whether plaintiff was in handcuffs at that time. Id.

**B.     Discussion**

Plaintiff has provided sufficient evidence for a reasonable jury to conclude that Agent Boyer knew of and had an opportunity to intervene in other officers' alleged assault on plaintiff. Smith, 293 F.3d at 650-51. "[W]hether a defendant had a realistic chance to intercede will turn on such factors as the number of officers present, their relative placement, the environment in which they acted, the nature of the assault, and a dozen other considerations." Figueroa, 825 F.3d at 107. Because other officers were approaching the passenger when Agent Boyer arrived, he had an opportunity to go to the driver side and intercede in the alleged assault.

18

Agent Boyer looked at the driver side of plaintiff's SUV before deciding to approach the passenger side. Dkt. No. 106-10 (Boyer Dep.) at 78:11-19. Viewing the facts in the light most favorable to plaintiff, Agent Boyer witnessed other officers punching plaintiff as they pinned him against the open driver side door. Dkt. No. 106-3 (Torres Dep.) at 73:16-74:10. Instead of approaching them he chose to move toward the passenger even though other officers were already approaching the passenger. Dkt. No. 106-10 (Boyer Dep.) at 63:7-21, 78:20-80:14, 60:5-14. Unlike the evidence against Detective Krasley, the evidence against Agent Boyer suggests he 1) was in a position to clearly view the alleged assault on plaintiff and 2) chose to assist in the passenger's arrest even though the presence of other approaching officers diffused the threat posed by the passenger. A reasonable jury could conclude that Agent Boyer knew that his fellow officers were using excessive force against plaintiff and had an opportunity to intervene. Therefore I will deny defendants' motion with respect to plaintiff's claims against Agent Boyer.

An appropriate Order follows.